The STATE OF DELAWARE, ex rel. Horace T. Brumley, plaintiff below, plaintiff in error *vs.* THE JESSUP AND MOORE PAPER COMPANY, a corporation of the State of Delaware, defendant below, defendant in error.

*Mandamus—Allegations of Alternative Writ; Conclusiveness—*
*Return; Conclusiveness—Stockholders—Right to Inspect*
*Books—Production of Books—Unreasonable By-laws*
*—Sufficiency of Return—Right to Quash Part—*
*Relief in Whole or Part.*

1. Allegations in an alternative writ of mandamus, not denied in the return, are taken as true, on motion to quash the return.

2. If the return to an alternative writ of mandamus does not show a compliance with the mandate of the writ, it must either deny the truth of the allegations in the writ, or state facts sufficient in law to defeat the relator's right.

3. The return to an alternative writ of mandamus is conclusive and must be taken as true for the purpose of the case.

4. The officer of a domestic corporation, having the actual possession of the books of the corporation, desired for inspection, is a proper party defendant in mandamus proceedings for the production of the books; but it does not follow that he is the only proper defendant, or that he must necessarily be made a defendant.

5. The Superior Court, may, by mandamus, compel the production of the books of a domestic corporation which are in the possession of its officers outside of the State.

6. A domestic corporation cannot escape the performance of a legal duty resting upon it by showing that the duty rests primarily on non-resident officers.

7. A stockholder has a right to inspect and make extracts of the books of the corporation at a proper time and for proper purposes.

8. The right to make copies, abstracts and memoranda of documents, books and papers, by a stockholder, is as full and complete as the right of inspection thereof.

9. A by-law which vests the legal right of inspection of a corporation in the discretion of the board of directors, and makes their decision final, is unreasonable and void.

10. A by-law which denies a stockholder the right to make extracts of the books or records of the corporation is unreasonable and void.

11.   When the allegations in the alternative writ show, without positive denial in the return, that the relator is a holder of a large part of the stock of the corporation, which has no market value, which he was forced to acquire to protect himself, that the relator had requested information as to the value of the stock for the purpose of a sale thereof and was refused, he is entitled to a peremptory writ of mandamus to inspect and make extracts of the books of the corporation.   ·

12.   A return to an alternative writ of mandamus to compel a corporation to permit a stockholder to inspect its books to ascertain the value of his stock, alleging that the relator had never given satisfactory assurance to the board of directors that he did not desire the information requested, or to be obtained by an inspection of the books, for the purpose of communicating it to others, not stockholders, in accordance with the terms of the by-laws; and that concerted action by several stockholders to obtain information regarding the affairs of the company· convinces the management that the information might be communicated to persons hostile to the business of the company, is uncertain and argumentative, and not sufficient.

13.   A return which fails to show either a compliance with all the mandates of the alternative writ, or a legal excuse for not complying therewith is insufficient.

14.   It is generally competent for the respondent to set forth in his return several distinct and separate defenses.   If he prevails in either, the peremptory writ will be refused; if they be repugnant, the Court may quash the return; but the Court may, in its discretion, quash such portion of the return as may be deemed sufficient and allow the rest to remain.

15.   A return to an alternative writ which, though sufficient in other respects; disclosed, on the part of the respondent company, a non-compliance with that part of the mandate of the alternate writ to suffer and permit the relator to inspect the books to ascertain, whether particular stock was legally issued, whether unlawful contracts had been made, the value of his stock, no legal excuse for non-compliance being shown, the relator is to that extent entitled to have a peremptory writ of mandamus, under such reasonable regulations as to time and place as the Court may  direct.

16.   A demand, on the part of the relator, for excessive relief does not preclude the granting of the relief to which he is entitled, under the facts found from the alternative writ and the return.

(*June  22,  1910.*)

PENNEWILL, Chief Justice,   and   CONRAD,   WOOLLEY   and HASTINGS, Associate Judges, sitting.

*Robert H. Richards* for plaintiff in error.

*Saulsbury, Ponder* and *Morris* for defendant in error.

Supreme Court, June Term, 1910.

WRIT OF ERROR to the Superior Court for New Castle County (No. 2, January Term, 1910)—(No. 114, June Term, 1908, below).

See 7 *Pennewill.*

Petition by the Attorney-General, on the relation of Horace T. Brumley, for mandamus against the Jessup & Moore Paper Company. Motion to quash the return of the Alternative Writ was refused. The relator took a bill of exceptions. The determination of the Court below was reversed in part, and the case remanded. The facts fully appear in the opinion.

HASTINGS, J., delivering the opinion of the Court:

On the first day of July, A. D. 1908, the State of Delaware upon the relation of Horace T. Brumley, the plaintiff below and also the plaintiff in error, filed a petition in the Superior Court of the State of Delaware in and for New Castle County praying for a writ of peremptory mandamus directed to The Jessup and Moore Paper Company, the defendant. On the same day a rule was issued directed to said defendant to show cause why the prayer of the petitioner should not be granted, A motion was subsequently made by the defendant to quash said rule and dismiss said petition, and this being refused by the Court, on motion of the counsel for the plaintiff a writ of alternative mandamus was issued. On the sixteenth day of January, A. D. 1909, a return to said alternative writ was filed by the defendant and later a motion was made by the plaintiff to quash said return on the ground that it was uncertain, argumentative, ambiguous, evasive, inconsistent, immaterial and insufficient in law. On the fourth day of June, A. D. 1909, it was ordered by the Court that this motion be refused.

The only assignment of error is the refusal of the Court below to grant the motion to quash the said return.

The petitioner Brumley, alleges in his petition that the defendant is a corporation of the State of Delaware, having an outstanding preferred stock of $350,000., par value, and an outstanding common stock of $1,000,000., par value; that he is the owner of common stock having a par value of $68,000; that he was forced to acquire said stock for his own protection, he having been an accommodation indorser of a note, to secure which, said stock was pledged and which he as indorser was compelled to pay; that there is no market for said stock and he is unable to ascertain from the said corporation sufficient facts necessary to enable him to determine its value; that he desires to sell it and could sell it if he could give any assurance of its value; that he has received no dividend or income therefrom; that the certificate representing said shares of stock contains a false statement upon its face in that it states the amount of preferred stock to be one hundred thousand dollars less than that actually issued and outstanding at the time said certificate was issued; that he believed at the time he indorsed the note that the said statement on said certificate was correct; that the additional one hundred thousand dollars was unlawfully issued for less than par, but was issued as fully paid and that the holders thereof received dividends on the par value thereof; that the said corporation is conducting its business under unlawful contracts in restraint of trade and contrary to the interests of stockholders; that he has requested and demanded of the said corporation such statements concerning its financial condition and the right to inspect and take extracts from such of its books as might be necessary to enable him to determine the value of his stock, but this information and privilege has been refused him; that he has the right to examine the books as prayed for, and without such examination he cannot ascertain the accurate information he desires; that he desires to make the examination for the following purposes:

To obtain evidence as to the actual value of his stock.

To ascertain whether the said one hundred thousand dollars of preferred stock was unlawfully issued at less than par.

To determine under what unlawful contracts the said corporation is conducting its business.

To determine what are the assets and liabilities and earning powers of said corporation.

The petitioner further states that he does not desire to inspect the books of the corporation for mere idle curiosity, nor for speculative purposes, nor for any improper purpose, and asks for permission to inspect and make copies of:

"(a). The minute book or books containing the proceeding or proceedings of the Directors of the said Company from January 1st, 1903, to the present time.

"(b). The books of account of said corporation which show the amount or amounts received from the sale of the preferred stock from January 1st, 1903, to the present time, and the books of account of said corporation showing the disposition of funds received from.the sale of preferred stock during the period last aforesaid.

"(c). The stock book showing the dates when, the persons to whom, and the number of shares issued to each person respectively of the preferred stock of the said Company.

"(d). The stock book showing the dates when, the persons to whom, the number of shares issued to each person respectively of the common stock of the said Company.

"(e). The ledgers and other books showing the amount of business done by the Company from the first day of August 1906, up to the present time.

"(f). The statements submitted to the Directors showing the business done by the Company, its profits and losses and assets and liabilities during each period of six months from the said first day of August, A. D. 1905, until this time."

This petition is incorporated in the alternative writ and it is important to note to what extent the allegations mentioned therein are denied by the return filed by the defendant, as it is upon material allegations not denied that the Court must act.

The return denies that the one hundred thousand dollars of preferred stock was improperly and illegally issued, and states affirmatively that the failure to change the statement on the stock certificate of the amount of preferred stock outstanding was due to a mistake or oversight; it denies that the defendant has entered into unlawful contracts, and also denies that the petitioner is entitled to the information and inspection of books as prayed for, with the exception of the stock ledgers which are tendered for examination. There are other denials in the return, relative to the request made by the petitioner for information, based upon the failure of the petitioner to comply with a certain by-law of the defendant company. The other allegations of the petition, the defendant either specifically admits to be true or alleges that it does not know whether they are true or false.

In addition to the denials and admissions contained in the petition the return alleges a partial compliance with the alternative orders of the writ and gives certain reasons for not fully complying therewith. The partial compliance, as contended by the defendant, consisted in giving an opportunity to the petitioner to ·inspect all of its books that relate to or concern the issuing of the last one hundred thousand dollars of the preferred stock of the defendant company; and as evidence of such compliance there is attached to the return, and marked "Exhibit A," a copy of a letter which the defendant caused to be written and addressed to the petitioner and his counsel. Said letter is dated January 14, 1909, two days before said return was filed.

The reasons for not fully complying are stated to be,—

That all the books, accounts, papers, etc., which are desired to be inspected by the petitioner, except the stock ledgers, are within the State of Pennsylvania, in the custody of the defendant's officers, who are residents of said State, and are not within the jurisdiction of the Courts of the State of Delaware; and further, that the following by-law was on the twentieth day of March, 1908, duly adopted by the defendant company:

"Article VI. The books and accounts of the Company shall

24 Del.] State ex rel. Brumley vs. The J. & M. Paper Co. 385

Opinion.

be examined each year by an expert, to be named by the President, and a report of the same made to the Board.

"No information in regard to the business or operations of the Company, and no copy of nor extract from any of the books or records of the Company shall be furnished to any person by any officer of the Company, except by direction of the Board.

"Stockholders shall have the right to inspect the books or records of the Company only with the permission of the Board.

"Stockholders desiring information in regard to the business or operations of the Company, or desiring to make inspection of the books or records, shall make application in writing to a regular meeting of the Board of Directors, stating the specific purpose of the application, the particular information desired, and if inspection is requested the books and record required for that purpose.

"Such stockholder shall give assurance satisfactory to the Board that he does not desire the information requested or to be obtained by such inspection, for the purpose of communicating the same to others not stockholders; and further that he will not directly or indirectly disclose the Company's business or affairs to any person or persons whomsoever.

"Such examination, when permitted by the Board, shall be made by the stockholder in person only, and no extract from the books or records of the Company shall be made by any stockholder permitted to inspect the same.

"The decision of the Board on such application shall be final."

The return alleges that the petitioner, prior to the filing of the petition, was advised of the existence of this by-law, but never gave such assurance to the Board of Directors, as therein required, as would entitle him to the information sought.

Allegations in the writ which are not denied must be taken as true. This is a well settled principle of law. *Bay State Gas Co. vs. Content*, 4 *Penn.* 251.

*Woolley on Delaware Practice, at section* 1662, says:

"The return to the alternative writ, if it does not show a compliance with the mandate of the writ, must set forth either a

positive denial of the truth of the allegations contained in the writ, or state other facts sufficient in law to defeat the relator's right. * * * In the State of Delaware the common law rule prevails that the return of the alternative writ is conclusive and is to be taken as true for the purpose of the case."

Bearing in mind these well known principles of law, and the facts in this case as above set forth, it is necessary for us to determine the following questions:—

1. Whether the Court below could compel the production of books of the defendant company that were in the possession of its officers in the State of Pennsylvania.

2. Whether the by-law above quoted is unreasonable and therefore illegal.

3. Whether there remain such undenied averments in the alternative writ as will entitle the plaintiff to the relief prayed for.

It is not necessary for us to pass upon the sufficiency of what the defendant contends was a partial compliance with the orders of the alternative writ, inasmuch as that refers only to the issue of the last one hundred thousand dollars of preferred stock. The plaintiff alleges this issue was unlawful, but this allegation the defendant positively denies, and as the return is conclusive and must be taken as true for the purpose of this case, such denial on the part of the defendant is a sufficient excuse or reason for not complying with that part of the mandate of the alternative writ.

*First.* Can the Court compel the production of the books of the defendant which are in the possession of its officers outside the State?

Upon this point the Court below said: "The averment of the respondent that certain books and papers, the inspection of which is asked for, are now in Philadelphia, would not avail. If their inspection was necessary, the Court would order their production." This conclusion is undoubtedly correct. It has often been decided that the officers of the corporation having the actual possession of the books desired to be inspected were proper parties defendant, but it does not follow that he is the only proper defen-

24 Del.] State ex rel. Brumley vs. The J. & M. Paper Co. 387

Opinion.

dant, or that he must necessarily be made a defendant. A corporation existing under the laws of this State is within the jurisdiction of its courts and if there is a legal duty resting upon it to do a certain thing it cannot escape liability by showing that that duty is primarily upon certain officers who reside outside the State. In the case of *Pan American Co. vs. DeJulvecouert, Penn.* 391, where objection was made to the writ issuing against a resident Director, who had been made a defendant with the corporation, the Court said: "He has not expressly denied his power to perform the duty prayed 'for, and it does not seem impossible, that if the peremptory writ should be issued, he would then be able to comply with its requirements." So in this case, there is no denial that because the books and papers are in possession of the officers of the defendant in the City of Philadelphia that the defendant could not have complied with the mandate of the alternative writ. But, as counsel for the defendant frankly admit, the case of *Content vs. Bay State Gas Co.*, 4 *Penn.* 497, decided in this Court, is an authority sustaining the decision of the Court below upon this point, and is controlling in this case.

*Second.* We will next consider whether the by-law quoted above was illegal and void.

The Court below said upon this point: "The by-law set up as a defense, which absolutely vests in the discretion of the directors the right of a stockholder to inspect or examine the books of the company, and which makes the decision of the directors final is both unreasonable and unlawful and would be so regarded by this Court."

The charter of the company gives the directors power to make by-laws for its government and the regulation and management of its business and concerns, and also power to repeal, modify and amend such by-laws at pleasure. It is not contended by counsel for the defendant that this provision of the charter permits the directors to make a by-law that is unreasonable or contrary to law, but it is insisted that this by-law is reasonable and not unlawful. It may be well to here notice certain of its

provisions.  One is that a stockholder before he can examine
the books of the Company must "give assurance satisfactory to
the Board," etc.  Another is that "such examination, when per-
mitted by the Board, shall be made by the stockholder in person
only, and no extract from the books or records of the Company
shall be made by any stockholder permitted to inspect the same,"
and lastly that "The decision of the Board on such application
shall be final."

The principle of law has long been established in this State
that a stockholder of a corporation has a right to inspect and
make extracts from the books of the corporation at a proper time
and for proper purposes.  In the case of *Swift vs. Richardson*,
7 *Houst*. 338, the Court said the authorities are uniform upon the
point that "a corporator may have a mandamus to compel the
*custos* of corporate documents to allow him an inspection, and
copies of them, at proper times and on proper occasions; he show-
ing clearly a right on his part to such inspection and copies, and
refusal on the part of the *custos* to allow it."  To the same effect
is the case of *Pan American Co. vs. De Julvecourt*, 5 *Penn*. 391.

It was also said in the case of *Swift vs. Richardson*, above re-
ferred to, that "The right to make copies, and to make abstracts
and memoranda of documents, books and papers, by a stock-
holder in an incorporated company, is as full and complete as the
right of inspection thereof."  Upon these authorities it must be
admitted that under certain circumstances a stockholder has a
right to inspect and make extracts from the books of the corpora-
tion.  This by-law undertakes to take from the stockholder the
right to have the Court pass upon the question whether he is en-
titled to the inspection.  It forces him to make his first and final
appeal to the Board of Directors.  In other words the stock-
holders' legal right is delegated to the discretion of the Board.
This applies to the inspection only.  With respect to the right
to make extracts, that is taken away entirely by the following
words:  "No extract from the books or records of the Company
shall be made by any stockholder permitted to inspect the same."

There may be other provisions of this by-law which are

objectionable, such as that portion which provides that no inspection shall be made except by the stockholder in person, but it is not necessary for us to consider this question further. No authority is cited, and we can find none, which would sustain this by-law. Our conclusion is that the Court below was correct when it said this by-law was unreasonable and unlawful, and should be so regarded by the Court.

*Third.* We now come to the last, the most important and the most difficult question in this case, namely, whether there remain such undenied averments in the alternative writ as will entitle the plaintiff to the relief sought.

From the facts which we have heretofore stated, it will be observed that there remain in the alternative writ undenied allegations to the effect that the defendant is a corporation of Delaware with capital stock outstanding of $1,350,000; that the plaintiff is the owner of stock, the par value of which is sixty-eight thousand dollars, which he was forced to acquire, which he desires to sell and could sell if he could give any assurance of its value; that he is unable to ascertain from the defendant sufficient facts to enable him to determine its value; that he has requested that he be given such facts and has demanded the right to inspect the books and take extracts therefrom for such purpose, all of which has been refused him; that he does not desire to inspect the books and make extracts for mere idle curiosity, nor for speculative purposes, nor for any improper purpose. The question then, before us briefly stated is, whether the owner of about one-twentieth of the outstanding capital stock of a corporation, which has no market value and which the owner was forced to acquire for his own protection, and which he desires to sell, is entitled to inspect and make extracts of the books of the corporation for the purpose of ascertaining its value, the corporation having refused to give him the information or permit him to examine the books.

That the stockholder has the right to inspect the books of the corporation at a proper time, for proper purposes, is not dis-

puted; and, as we have heretofore stated in this opinion, it is a principle of law long ago recognized in this State.   In some states this right is governed by statutes; in others, such as our own, it is recognized as a common law right.   Whether this application is for a "proper purpose" within the legal and proper contemplation of that term, is the new and heretofore undecided question in the courts of this State.   The nearest case decided in our courts to the one we are now considering is that of *Pan American Co. vs. DeJulvecourt*, 5 *Penn.* 395, in which the Court said:

"It seemed to us that upon the face of the record the relator had made out a case that entitled him to the issuance of the peremptory writ, his declared purpose being among other things, to ascertain the value of the stock of the company of which he was such a large holder; to learn whether the defendant company in fact owned or controlled the valuable asphalt properties it claimed to own; whether the stock issued had ever actually been paid for or not; and whether the various representations made to  the petitioner by the president of the company, and by reason of which the relator was induced to part with his property, were true or false."

One of the declared purposes in that case was "to ascertain the value of the stock of the  company of which he was such a large holder."   It is true there were other "purposes" alleged in that case, and how much influence they had on the Court we do not know, but it is certain that the most important, if not the controlling purpose, alleged, was to ascertain the value of his stock.

In the case of *Neubert vs. Armstrong Water Co.*, 211  *Pa. St.* 582, decided by the Supreme Court of Pennsylvania in 1905, the Court said:

"In the opinion of the learned Court below refusing a new trial, it is stated: 'The testimony on the trial shows, *inter alia*, that James D. Stocker, Charles H. Welles and William Walker in June, 1902, bought about six-sevenths of the stock of the Armstrong Water Company, and that the remaining one-seventh of said stock was held and owned by the plaintiffs; that Stocker,

24 Del.] State ex rel. Brumley vs. The J. & M. Paper Co.   391

Opinion.

Welles and Walker were endeavoring to purchase the plaintiff's stock and had made them an offer of $70 per share for the same. The plaintiffs declined to sell until they were afforded an opportunity to examine the books and papers of the Company for the purpose of ascertaining and determining the value of their stock. There had been no statements issued by the defendant Company regarding its financial condition or other information furnished the plaintiffs whereby they could determine the value of their stock, and an inspection of the books and papers of the Company was nece sary for this purpose. Certainly, under these facts, which we must accept as established, the plaintiffs have shown a definite and proper purpose which justified a demand for an inspection of the books and papers of the corporation, which when justified can be compelled by mandamus.' "

In the case of *Garcia vs. Trenton Rubber Mfg. Co.*, 60 *Atl. Rep.* 1098, decided by the Supreme Court of New Jersey in 1905, where the relator could not get from the company any definite information as to the assets and liabilities of the corporation, the Court said:

"In September, 1904, the relator applied to the president in writing for permission to examine the books of the company, and this was refused. The relator states that he desires to dispose of his stock, and has offered to sell it to the present holders of the stock of the company, but without success, and he seeks the information which he now desires to ascertain its value in order to enable him to offer it for sale. This application appears to be made in good faith, and for the purpose of obtaining information to which the relator seems to be entitled."

The Court then cited the case of *Bruning v. Hoboken Printing and Pub. Co.*, 67 *N. J. L.* 119.

One of the latest cases on this point is that of *Varney vs. Madison M. Baker*, 194 *Mass.* 239, decided in 1907. The Court in its opinion said:

"The single Justice who heard the case found that the petitioner honestly believes that the Company is being mismanaged

and desires in good faith for the protection of his interest in the
corporation to examine the books and records of the company
for the purpose of ascertaining its condition and the value of its
stock, and determine what to do with the stock and whether there
has been mismanagement of the corporation and if so what
effect it has had upon the assets and business of the corporation,
in order that he may be enabled to bring·a bill in equity for the
appointment of a receiver or to take proper proceedings for the
benefit of the corporation and his interest therein.  *  *  *  It
was not proved to the satisfaction of the Justice that there was
any mismanagement in fact, or any incapacity on the part of the
managing officers.  *  *  *

"The stockholders of a corporation are the equitable owners
of its assets, and the officers acting in a fiduciary relation as agents
of the corporation and of the stockholders.  They should be
ready to account to the stockholders for their doings at all
reasonable times, and the stockholders have a· right to inspect
their records and accounts, and to ascertain whether they are
faithful, honest and intelligent in the performance of their duties.
There is no good reason why the stockholders, acting in good faith·
for the purpose of advancing the interest of the corporation and
protecting their rights as owners, should not be permitted to
examine the corporate property, including the books and ac-
counts.  *  *  *

"According to the general rule in this country, it is not neces-
sary that there should be any particular dispute to entitle the
stockholders to exercise this right.,  Nothing more is required
than that acting in good faith for the protection of the interest of
the corporation and his own interest he desires to ascertain the
condition of the company's business.

"Of course, the right at common law is not absolute, so that
it can be examined for mere curiosity, or for merely speculative
purposes, or vexatiously.  *  *  *  There is nothing in our
statute which enlarges or diminishes this right as it exists at
common law."

A question very similar to the one we are now considering

has been passed upon by the Supreme Court of the United States. It was the case of *Guthrie vs. Harkness*, 199 *U. S.* 148, being an error to the Supreme Court of the State of Utah, Mr. Justice Day, delivering the opinion of the Court, said:

"There can be no question that the decisive weight of American authority recognizes the common law right of the shareholder, for proper purposes and under reasonable regulations as to place and time, to inspect the books of the corporation of which he is a member. * * * In many of the states this right has been recognized in statutes which are generally held to be merely in affirmance of the common law.

"It is suggested in argument that if the shareholder has this right it may be abused, in that he may make an improper use of the knowledge thus gained. There is nothing in this record, however, to suggest, by way of argument or testimony, that the shareholder desired the information which the books would give for other than a lawful purpose. On the other hand there is a distinct finding that the inspection was desired for the purpose of ascertaining the true financial condition of the bank and for the purpose of enabling the complainant to find out the value of his stock, and whether its business was being conducted according to law. There is no suggestion that the complainant was acting in bad faith or from improper motives, or that he was seeking in any way to misuse the information which the books would afford him. We need not hold that there may not be circumstances which would justify the Court in withholding relief to a stockholder seeking an examination of the books and accounts of the bank. In the case before us no reason is shown for denying to the stockholder the right to know how his agents are conducting the affairs of a concern of which he is part owner. Many legal rights may be the subject of abuse, but cannot be denied for that reason. A director, who has the right to an examination of the books, may abuse the confidence reposed in him. Certainly this possibility will not be held to justify a denial of a legal right, if such right exists in the shareholder."

The Justice in his opinion quotes from the case of *Huylar vs. Craigin Cattle Co.*, 40 *N. J. Eq.* 392, as follows:

"Stockholders are entitled to inspect the books of the Company for proper purposes at proper times. And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is necessary to their protection. To say they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examinations of the books by an expert accountant. The books are not the private property of the directors or managers, but are the records of their transaction as trustees for the stockholders."

We have quoted very fully from these opinions in well considered and recently decided cases. Many more could be cited on the general proposition, but we have only referred to those that we consider throw some light upon the particular question before us. No authorities are cited upon this point by the defendant, except the case of *Bevier vs. U. S. Wood Preserving Co.*, 69 *Atl.* 1008, in which the following language was used by the Court: "An examination of their testimony leads us to believe that the applicant does not desire the examination of the books of account, papers and documents of the defendant corporation in good faith but rather for the purpose of aiding a competitor." Of course in any case where the Court comes to such a conclusion as this, the plaintiff is not entitled to·examine the books of the corporation.

In the case before us counsel for the defendant in their brief filed base their contention largely upon the fact, as they contend, that the plaintiff is not acting in good faith. This is a suggestion of counsel, however, and not a part of the record. This plaintiff alleges that he does not want to examine the books for speculative purposes, out of idle curiosity, or for any improper purpose. Not a single one of these allegations is denied by the defendant.

The only suggestion made by the defendant that even intimates that the purpose is an improper one is that the plaintiff is a brother-in-law of a person engaged in a like business, but even this is not made a part of the return and therefore is no part of the record. The defendant in its return does use this language:

"That the concerted action of several stockholders of this Company applying at practically the same time to obtain information regarding its affairs, convinces the management of the defendant Company that it is most desirable to prevent any information concerning its internal management, financial or other affairs and business, from being obtained by persons who may communicate it to others whose hostility to the defendant Company might cause them to take advantage of such information to injure this Company and bring loss upon it."

But this language is too uncertain and argumentative to have any value in pleading and we cannot assume that it denies or intends to deny any of the material allegations in the alternative writ. The plaintiff is the owner of stock, the par value of which is sixty-eight thousand dollars, which was not acquired by him for speculative purposes; indeed it is stock which he did not buy at all, but which he was compelled to take for his own protection. There is no market for the stock and he has requested the directors to give him such information concerning its financial condition as would enable him to tell its value. They have refused to do this, or permit him to examine the books for that purpose. It would seem upon principle, as well as authority, that the plaintiff is entitled to such information. We can't assume that he wants it for an improper purpose when everything in the record shows the contrary; nor can the right be denied him because he might use it in a way that would injure the defendant. The business of the defendant is a part of his business and it is not to be assumed that he would do a thing which would be an injury to his own affairs.

We might say that we have announced no new doctrine in this opinion. That a stockholder is not entitled to inspect the books of a corporation for speculative purposes, idle curiosity,

or any improper purpose, is a principle in nowise affected by what we have here said.

In the case of *Bruning vs. Hoboken Printing and Publishing Co.*, 67 *N. J. L.* 119, the Court said:

"The rule of common law as to the right of inspection by stockholders of a trading company exists here, and such right may be enforced by this Court by *mandamus*.

"The right is not given to gratify curiosity or for speculative purposes, but only when its exercise is sought in good faith and for a specific purpose. Such purpose must appear by the proofs on the application or the writ will be denied.

"The allowance of the writ is within the discretion of the Court, upon the facts presented in each particular case.

"In the application before the Court there is no evidence indicating the purpose of the relator in seeking the right to inspect the cash-book and other books of the company, and in that condition of the proof the writ must be denied."

As was said in that case, the allowance of the writ is within the discretion of the Court, upon the facts presented in each particular case. But from the facts presented to us in this particular case we are satisfied that the plaintiff's purpose is a proper one, and that he is entitled to at least certain of the information which he seeks.

It follows, therefore, that the return of the defendant is insufficient, in that it fails to show either a compliance with all the mandates of the alternative writ or a legal excuse for not complying therewith. The return is good, however, and until proven false, is an absolute bar as to some of the demands made by the plaintiff. Is there any good reason, therefore, for quashing the whole of a return in *mandamus*, when part of it is good and makes a complete answer to a part of the alternative writ, for the only reason that it is not a sufficient answer in all respects? This question was not argued before us and we have not been able to find much help in the text books or the reported decisions. There is a decision in our own State, however, in which it was said it was within the discretion of the Court to quash a part of a re-

turn and to allow the rest to remain. It is the case of *McCoy, et al. vs. Allee, et al.*, decided in the Court of Errors and Appeals in 1897 and reported in 2 *Marvel at page* 543. In that case the Court reviewed the general principles and rules of pleading and practice prevailing in cases of mandamus and stated *inter alia* that:

"It is generally competent for the respondent to set forth in his return several distinct and separate defenses, at his option, and if he prevails in either of them, the peremptory writ will be refused. But if they be inconsistent or repugnant, the Court may quash the entire return; yet it is within the discretion of the Court to quash such portion of the return as it may deem insufficient, and to allow the rest to remain."

This same principle is laid down in *High's Extraordinary Legal Remedies at section* 463. In the case of *The King vs. Mayor* etc. *of Cambridge*, 2 *Term Rep.* 456, the Court said:

"The Court may undoubtedly quash the whole return if they choose; then it follows that we may quash a part of it if we think it right."

In jurisdictions, such as our own, where the ancient practice prevails of ascertaining the facts from the petition and return, this rule would seem to be the safe and better one. In this case the plaintiff seeks to inspect the books of the defendant for the purpose of ascertaining whether a certain amount of stock was properly and legally issued; whether unlawful contracts had been entered into, and lastly to ascertain the value of his stock. The defendant in its return denies that the stock was improperly or unlawfully issued, and also denies that it has entered into unlawful contracts. These denials form a complete and sufficient answer to this much of the alternative writ. But according to our view the defendant's return is not sufficient as to the other point, namely, the plaintiff's right to examine the books to ascertain the value of his stock. Is there any good reason, therefore, why the Court should not hold the return sufficient as to the first two purposes mentioned, and insufficient as to the last one? We think not. If, as an illustration, the defendant has submitted certain books for examination, as commanded in the alternative writ, but refused to submit others on the ground that the plaintiff

had no legal right to see them, and upon motion to quash the return the Court concluded that the defendant was bound to submit those which he had refused to submit, it would seem absurd to say that a peremptory writ should not be confined to those things which the defendant had refused to do.

This brings us to the consideration of the practice relative to the peremptory writ. It has been decided in some jurisdictions that the peremptory writ must follow in exact terms the alternative writ; this in many instances is in obedience to a statute. But practically all the text writers agree, and the great weight of the modern decisions is, that a demand on the part of the relator for excessive relief does not preclude the granting of the relief to which the relator is entitled under the facts stated. We think it hardly necessary to cite authorities, or discuss this point. See, however, 27 *Cal.* 655; 165 *Ill.* 17; 142 *Ind.* 1.

We are of opinion that the Court below erred in finding the defendant's return wholly sufficient and in refusing to quash that portion of it which disclosed on the defendant's part a non-compliance with the mandate of the alternative writ to suffer and permit the relator to inspect its books for the purpose of ascertaining the value of his stock, and which, in the alternative, presented no sufficient reason or excuse for failing so to do. Therefore, in this respect and to this extent we reverse the action of the Court below, and hold, that in invoking the right to inspect and make copies of the books, papers, accounts, etc., of the corporation of which he is a stockholder, the relator has shown that he seeks the information that would thereby be disclosed to him, for a proper purpose, and is therefore entitled to the peremptory writ of *mandamus* of the Court to which this case is remanded, to be issued by that Court under such reasonable regulations as to time and place as it may direct, commanding the defendant to suffer and permit the relator, or his duly constituted attorney, to inspect and make copies of such of the books, papers, accounts and writings of the defendant mentioned in his petition and only of such of them that under the direction of the said Court are found essential and sufficient to furnish the information whereby the relator may determine the value of his stock.