In the Matter of the
OSTEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE.

Civ. A. No. 1772.

*New Castle, May 7, 1963.*

*Ernest S. Wilson, Jr.,* of Wilson & Lynam, Wilmington, for petitioner, Edward J. Hill and The Osteopathic Hospital Assn. of Del.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for intervenors.

SEITZ, Chancellor: Edward J. Hill ("petitioner") filed an application for a summary order of election pursuant to 8 *Del.C.* § 224. Petitioner alleges that he is a "member" of The Osteopathic Hospital Association of Delaware, a non-profit Delaware corporation having no capital stock. He further alleges that the 1962 annual meeting of the corporation failed for lack of a quorum and that two succeeding efforts similarly failed. According to the By-Laws of the corporation, a quorum at such meeting shall consist of two-thirds of the "members" of the corporation. A rule to show cause why the petition should not be granted was served upon the corporation's president. An answer was then filed by counsel for the corporation admitting the allegations of the complaint and expressing no opposition to the issuance of the requested order. The court ordered the deferred meeting to be noticed for and held on April 18, 1963.

Thereafter Glenn D. White, Merritt G. Davis, Sr., and Bernarr W. Blackman ("intervenors") petitioned for and were granted leave to intervene on behalf of themselves and all other members similarly situated to oppose the granting of relief in the form requested. These

intervenors say that they are osteopathic physicians who are "members" of the corporation and that petitioner is not such a member. Thus, they contend that petitioner is not entitled to vote at any meeting of the members of the corporation.

The court set aside the meeting called for April 18 in order that it might resolve the issues raised by the parties.

A brief recitation of the background of this Association will aid perhaps in understanding the nature of this controversy. The Association was organized in 1946 as a membership corporation. Its primary object was to provide surgical and medical service and care and nursing for persons in need thereof. It presently operates the Riverside Hospital. Membership in the corporation, according to the minutes of the incorporators, was restricted to physicians in good standing in the Delaware State Osteopathic Society. Lay persons, however, were eligible for election to the Board of Trustees if approved by a majority of the members. It appears that after 1949, lay members were continually present on the Board.

In 1955, the By-Laws of the corporation were amended in several ways. Lay persons were declared to be eligible for voting membership in the corporation, under certain conditions, if approved by a majority of the existing voting membership. Several such persons were from time to time elected to membership, and four lay persons concededly hold such status today. Also, in 1955, the size of the Board was fixed at twenty-one trustees, apparently with the understanding that seven would be elected each year for staggered three-year terms. The 1955 By-Laws, as amended, further provided in Article IV:

> "These By-Laws may be amended by a two-thirds majority of the members of the Board of Trustees at any regular meeting, provided a full statement of such proposed amendment shall have been published in the notice calling the meeting."

In 1960 and 1961, certain amendments were made by the Board of Trustees which cumulatively have given rise to the present controversy. On April 21, 1960, at a meeting of the Board at which

seventeen trustees were present, the Board voted to reduce the quorum requirement for Board meetings to seven members. On December 21, 1961, nine members of the Board convened at a meeting called for that date and by a vote of eight to one further amended the By-Laws. This 1961 amendment provided that the members of the Board of Trustees would thereafter, by virtue of the amended By-Law, be full voting "members" of the Association. Parenthetically, under the Certificate of Incorporation, the power to elect trustees for full terms of office at the annual meeting of the corporation is vested in such members. At bottom then the present controversy concerns the validity of the 1961 amendment which would substantially enlarge the voting membership of the corporation.

The parties are agreed that the 1955 By-Laws are the appropriate starting point for considering the validity of such amendments as occurred thereafter. The intervenors concede that they are unable to contradict petitioner's evidence that the 1960 amendment reducing the quorum for meetings of the Board to seven trustees was validly adopted in accordance with the Certificate and By-Laws of the corporation as they then existed. Since that amendment was adopted unanimously at a meeting attended by seventeen of the twenty-one trustees, the intervenors have had no occasion to contend, with respect to that amendment, that it was not adopted "by a two-thirds majority of the members of the Board of Trustees", in accordance with Article IV of the By-Laws as set out above. Thus, as of the 1961 meeting of the Board, seven trustees were sufficient to constitute a quorum, and amendments to the By-Laws remained subject to the voting provision of Article IV.

Nine trustees attended the 1961 meeting of the Board. Eight voted approval of the amendment to the By-Laws that now provides that the persons constituting the Board of Trustees shall be "members" of the corporation. The intervenors do not contradict petitioner's evidence to the effect that proper notice of the proposed amendment was given and the meeting validly called. They contend, however, that the language in Article IV of the By-Laws to the effect that the By-Laws "may be amended by a two-thirds majority

of the members of the Board of Trustees" requires a two-thirds vote of the entire Board in order to amend the By-Laws and not merely two-thirds of those present. They further contend that even if the vote of eight trustees was sufficient under Article IV, the proposed By-Law in the setting is "unreasonable" and therefore should be struck down by the court.

First, I am satisfied that Article IV of the By-Laws only requires the affirmative vote of two-thirds of the trustees present and voting to amend the By-Laws, assuming the existence of a quorum. I am not unmindful of the ambiguity in the language of Article IV, but the rule of construction ordinarily applied in such cases is clear. In the absence of evidence to the contrary, the By-Law is to be interpreted as requiring only a majority (in the present case, a two-thirds majority) of all the votes cast. Compare *Standard Power & Light Corporation v. Investment Associates*, 29 *Del.Ch.* 593, 51 *A.2d* 572. This is in keeping with the notion that the actions of executive boards ought not be encumbered by such stringent voting requirements that because of the absence or indifference of certain members they are thereby made incapable of transacting the corporation's business. The danger that a small minority may take actions which are not supported by a majority of the board is mitigated in the ordinary case, as it was here, by the requirement that notice be given prior to the meeting of the proposals to be there considered. Thus, I find that the trustees adopted the 1961 amendment in accordance with the mechanism set forth in the By-Laws of the corporation.

It is accepted law that a by-law which is unreasonable, unlawful, or contrary to public policy may be declared void though adopted by legitimate procedures. 8 *Fletcher, Cyc. of Corps. (Perm.Ed.),* § 4191; *State ex rel. Brumley v. Jessup & Moore Paper Co.,* 1 *Boyce* 379, 77 *A.* 16, 30 *L.R.A.,N.S.,* 290; compare In re *Flushing Hospital and Dispensary,* 288 *N.Y.* 125, 41 *N.E.2d* 917. Thus, the question here presented is whether the By-Law, though duly adopted by the Board, should under the circumstances be struck down by this court. The action taken by the Board will unques-

tionably have the effect of substantially changing the structure of this organization as it has heretofore existed. At the inception of the corporation "membership" in the Association was limited to osteopathic physicians. While the By-Laws were amended in 1955 so as to permit lay persons to become voting members of the corporation for a period of not more than three years, approval by a majority of the then "members" was a condition precedent to such membership. In contrast to the restrictive policy followed with respect to membership, the minutes of the incorporators indicate that from the beginning it was accepted that lay persons would be eligible for election to the Board. Indeed, since 1948, the corporation's Board of Trustees has been composed largely of lay persons, and such condition continues to exist at the present time. This has been true even though the power to elect trustees for full terms of office has rested exclusively with the voting membership of the corporation which consisted almost entirely of physicians.

Thus, in reviewing the history of this organization, one can see the persisting dichotomy between the trustees and the "members". What is the effect of the attempted By-Law amendment of 1961 on this pre-existing arrangement? By such amendment twelve lay trustees will become voting members of the Association without prior approval by a majority of the existing physician members. The result will be to dilute perhaps indefinitely the power of the physician "members" to exercise some measure of control over the Board by the device of corporate election. The meeting at which the Board took the action complained of was attended by nine trustees. Of the eight trustees voting in favor of the proposal five were non-members and two were lay persons who had previously been approved as "members" of the corporation. Only one physician "member" voted in favor of the proposed change. The lone dissenting vote was cast by the only other physician on the Board. It may be that the trustees voting on such proposal acted with the highest motives and in the best interest of the corporation, but the possibility of abuse is real. I am persuaded that a change of so fundamental a character in the structure of this rather unique organization could not validly be carried into effect by the unilateral action of the trustees

taken here. Something more is necessary to validate such an amendment where, as here, there is a sudden departure from the past form of corporate organization coupled with a complete absence of affirmative action by the group whose interests are adversely affected. Thus, upon weighing the considerations discussed above, I find that in context the 1961 By-Law is legally "unreasonable" in its operation and therefore is void.

As a result of the court's decision invalidating the 1961 amendment, the petitioner herein cannot be considered a "member" of the corporation and therefore his petition would ordinarily be dismissed. The intervenors, however, desire that a judicially-ordered meeting be held in accordance with the opinion of the court. The order hereon will grant such relief. The number of trustees to be elected at such deferred annual meeting poses a problem here, because in addition to the seven trustees whose normal three-year terms of office expire, there are a number of vacancies on the Board. It is not contended that the members lack the power at their annual meeting to fill these vacancies, but petitioner claims that the By-Laws equally authorize the remaining trustees to fill these posts by action of the Board.

■ The intervenors claim that no By-Law authorizing such action by the Board was ever validly adopted, and that in any case, if so adopted, such By-Law would conflict with the provisions of the Certificate reposing such powers in the "members". Petitioner, however, contends that a By-Law to such effect was adopted by the Board in 1959 in accordance with established procedures. His evidence on this point is uncontradicted. Petitioner also contends that the same By-Law received the approval of the Board at the 1961 meeting at which the Board purported to take the other action that has already been discussed. Since I have found that the procedures there followed by the Board were in accordance with the By-Laws and no question is raised here as to the "reasonableness" of such a By-Law, it follows that, standing by itself, a By-Law permitting the Board to fill its own vacancies exists and is valid.

 Does such By-Law otherwise conflict with the provisions of the Certificate? Article IV of the Certificate provides, in part, as follows:

> "* * * After the expiration of the term of office of the Board of Trustees elected by the incorporators, the members shall elect succeeding trustees, and each member shall have one vote, either in person or by proxy."

On its face Article IV does not appear to deal with the problem of filling vacancies on the Board. The term "succeeding trustees" I think clearly has reference to the annual elections of trustees for a full term of office. The intervenors do not contend that in the absence of a conflicting provision in the Certificate the trustees lacked power to adopt such a By-Law. Also, they do not contradict the evidence that the Board has for a number of years filled such vacancies as occurred therein. I am of the view therefore that Article IV does not preclude the adoption of a formal By-Law permitting vacanices on the Board to be filled by the Board itself. Thus, to the extent that the Board has already taken action to fill vacancies, the persons holding such offices are entitled to continue therein until the expiration of their respective terms.

The order of the court hereon will permit the members of the corporation at the deferred meeting to elect seven trustees to fill the positions which have become vacant by expiration of term of office. In addition, the members will also be permitted to fill existing vacancies, if any.

Present order on notice.

## On Motion for Reargument

The corporation applies for reargument limited to the court's conclusion that the 1961 amendment to the By-Laws was legally unreasonable. The application is accompanied by an affidavit. Because of some of the contentions made the court feels that a supplemental opinion is in order.

The corporation attacks the findings of fact and of law which underlie the court's decision invalidating the By-Law amendment that purported to make the members of the Board of Trustees "members" of the corporation. It first asserts that a policy similar to that incorporated in the By-Law amendment was announced at a meeting of the corporation in 1949, and indeed that such a By-Law was adopted by the Trustees in November 1954. First of all, in submitting the case for decision the parties agreed that the 1955 By-Laws were the starting point. But passing over this, one asks why the 1954 By-Law in question was not incorporated in the complete 1955 By-Laws if it had been adopted in 1954? Also, if it was "the policy" for the Trustees to become voting members, why all the discussion about it after 1955?

Actually, the corporation's "new" evidence tends to support, rather than negate, the view that prior to the amendment in question membership in the corporation was limited to persons receiving the approval of the existing voting membership. Thus, the medical staff at a regular staff meeting in 1961 declined to approve a report of its committee on By-Laws that recommended such a change. This explicit disapproval was not even known at the time the court filed its prior opinion. There is nothing in the record to indicate that the voting membership of the corporation ever formally approved the change sought to be made here, and in that sense the action taken by the Trustees in 1961 was "unilateral". Notice to the members cannot be equated with their approval.

Next, the corporation says that since the Certificate of Incorporation provides that the Trustees shall "elect" members to the corporation, the Trustees were authorized to adopt the amendment involved here. This provision of the Certificate, however, must be read in conjunction with another provision that states that the By-Laws shall establish the "rules and conditions for the admission of members". At bottom, then, the question is whether the members of the Board of Trustees, under their power to amend the By-Laws, could validly amend the "rules and conditions for the admission of members" so as to constitute themselves full voting members of the corporation.

The corporation says that since the By-Laws may be amended by the Board and since, at a minimum, there is nothing in the Certificate that purports to prevent the Trustees from making the change in the rules and conditions of membership attempted here, the court lacks the power to strike down the amendment to the By-Laws. In answer to this, I think it clear that if the action of the Board is otherwise objectionable, it cannot be saved by assuming the form of an amendment to the By-Laws. In the setting, the amendment here goes well beyond a change in the "rules and conditions of membership". By virtue of this amendment the Trustees, who occupy a fiduciary position in relation to the corporate membership, have seriously impaired a valuable right of these members under circumstances suggesting opposition by at least a majority of such "members". Moreover, by making themselves voting members of the corporation, they have obtained for themselves the capability of indefinitely maintaining control over the corporation's affairs. Parenthetically, the board members impliedly concede that this was their objective.

The Corporation makes much of the fact that the By-Law in question would alter the organization in keeping with preferred and presumably recommended methods of hospital administration. The fact that the institutional arrangement originally adopted by this hospital association might differ from the usual pattern for such organizations and in some respects may perhaps prove unwise would not justify an attempt to alter the existing structure by means which are otherwise improper. The court emphasizes that its decision did not preclude the change being made, as, for example, by an amendment to the Certificate of Incorporation. The court's decision went solely to the method by which this objective was to be accomplished.

Not because it is directly relevant, but merely to clarify the atmosphere, I consider petitioner's claim that the court's decision may jeopardize the standing of Riverside Hospital to receive Blue Cross benefits. This is said to follow if the physicians collectively become the hospital policy-making group. To the extent that the Board is the ultimate policy-making body, the court's decision did not purport to change the qualifications of the members of that body.

It can consist entirely of laymen. And to the extent that the membership of the corporation may be considered the "policy-making group", even if the proposed By-Law were valid, it would not without more result in laymen constituting a majority of the voting membership. Thus, this "scare" argument lacks legal and factual substance.

Thus, I adhere to my prior conclusion that the amendment which was passed by the board members is legally unreasonable in its operation and therefore is void.

The corporation in its motion mentions the defense of estoppel. Since that defense is asserted against only one of the intervenors, I need not consider it here.

Reargument is denied. Present order on notice.