THE STATE OF DELAWARE, upon the relation of EDWIN R. COCHRAN, JR., v. PENN-BEAVER OIL COMPANY, a corporation existing under the Laws of the State of Delaware.

(*January* 14, 1926.)

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Horace G. Eastburn* for petitioner.

*H. H. Ward* (of Ward, Gray & Neary) for respondent.

Court in Banc, New Castle County, November Term, 1925.

No. 157, March Term, 1925.

PENNEWILL, C. J., delivering the opinion of the court:

The defendant corporation was organized under the general corporation law of the state, but its legal status would be the same if it had been created by a special act of the Legislature. 14 *C. J.*, § 107. The vital question in this case is whether the provision inserted in defendant's certificate of incorporation, which gives the company the power to deny a stockholder the right to examine books and records, was warranted by anything contained in the general corporation law, or any other law of the state. If the general corporation law, the enabling act, authorized the provision, it would be as effective as though the Legislature had granted it by direct and special act. If such provision was not warranted by the general corporation law, then it constitutes no part of the certificate of incorporation, or charter, and should be rejected as surplusage. This proposition is amply supported by authority. *State ex rel. Ross v. Anderson,* 31 *Ind. App.* 34, 67 *N. E.* 207, and other cases.

The defendant contends that the eighth paragraph of *section 5* of the *General Corporation Law* (*Rev. Code* 1915, § 1919) warrants the following provision in its certificate of incorporation authorizing the directors—

"(c) To determine from time to time whether and, if allowed, under what conditions and regulations the accounts and books of the corporation shall be open to the inspection of the stockholders, and the stockholders' rights in this respect are and shall be restricted or limited accordingly, and no stockholder shall have any right to inspect any account or book or document of the corporation, except as conferred by statute or authorized by the board of directors, or by a resolution of the stockholders."

The eighth paragraph of *section 5* of the *General Corporation Law*, relied on by the defendant, is as follows:

"8. The certificate of incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of the stockholders: Provided, such provisions are not contrary to the laws of this state."

The first question that arises is this: Does the authority to create, define, limit and regulate the powers of stockholders embrace

the power to absolutely deny to stockholders the right to examine the books and records of the company? It seems to us that those words were not intended to give the corporation the power to prevent *any* inspection or examination of the company's books. Given their natural and obvious meaning, they would seem to confer upon the company the power to reasonably limit and regulate a power that the stockholder possessed, and not to entirely deprive him of it.

Under the common law a stockholder had the right to examine the books and records of the company, and that right could not be taken away except by a statute that expressly or by necessary implication authorized it. There is no such statute, and we conclude that the provision in the certificate of incorporation of defendant company, under which the relator was denied the right to inspect the company's records, forms no part of its charter and should be disregarded.

The corporation defendant adopted a by-law to the same effect as the provision improperly inserted in its certificate, but we do not understand it is claimed that a by-law could deprive the stockholder of his legal right to examine the company's books. On the contrary, counsel for the defendant says in his brief:

"The question before the court is not whether by virtue of a general power to make by-laws, a corporation may adopt a by-law making it discretionary with the board of directors as to whether a stockholder may examine its books generally. The question presented in the case is whether a provision may be inserted in the certificate of incorporation of a company similar to that in the charter of the defendant, and whether the language of such inserted provision should not be construed according to its natural meaning."

The words "creating, defining, limiting and regulating" the powers of stockholders may have been designed by the draftsman to give incorporators the power the defendant seeks to exercise, but it is impossible for us to believe the Legislature intended that the words should have such meaning. It is important, of course, in the conduct of its business, that a corporation should have to a large extent the right to regulate the stockholder's power of examination and inspection. Otherwise, the proper conduct of its business might be seriously embarrassed by troublesome and unreasonable stockholders seeking to exercise the right of examination. But we do

not think the Legislature, in enacting *paragraph* 8 of *section* 5 of the *General Corporation Law,* intended to take away that right entirely. It was meant that the corporation might provide in its charter that such right should be exercised at proper times, under proper conditions, for a proper purpose, and so as not to unreasonably interfere with the company's business. Such is the law of this and most of the other states.

If the purpose of said *paragraph* 8 was to give the corporation the power to prevent any examination of its books by a stockholder, the wonder is that words were not employed that would clearly express such purpose. It would probably have been difficult, if not impossible, to induce the Legislature to grant such power.

The only provision of law relative to the right of stockholders to inspect the books of the company is contained in *section* 29 of the *General Corporation Law (Rev. Code* 1915, § 1943), which expressly confers upon stockholders the right "at all times, during the usual hours for business" to examine the original or duplicate stock ledger of the company at the principal office or place of business of a corporation. This statutory right was not denied the relator.

Because the Legislature saw fit to expressly give stockholders the right to examine certain records of the company, it cannot be inferred that the stockholders' common-law right to examine any other records, under proper conditions and for a proper purpose, was thereby taken away. The statute granting the power to examine the stock ledger at any time during business hours did not expressly, or ᴸ necessary implication, give the corporation the power to prevent ᴄ. ᴺination of other pertinent records at proper times and under reasonable conditions.

While we think, for the reasons stated, that the provision in defendant's charter which permits the directors to deny any examination of the company's records by a stockholder is unauthorized and ineffective, this does not mean that in every case a stockholder may, under a general petition and prayer such as the relator has presented, be authorized by himself and his· agents to examine practically all the papers, books and records of the cor-

poration, which might result in a consumption of time and interference with business that would be injurious to the company. The law does not contemplate such a situation. While it is the duty of the court to protect he rights of stockholders, it is equally their duty to safeguard the rights of the corporation as such. Necessarily, every case involving the right to examine corporation books must be determined on its own facts. The extent and scope of the privilege granted must depend in a large degree upon the company's treatment of the relator's legitimate request, and the extent to which the company has furnished to its stockholders, by financial statements and otherwise, information relative to the conduct and condition of its business. The stockholder is entitled to reasonable information from his company along this line, and we do not think it would be ordinarily denied. If such reasonable information is furnished, the general relief asked for in this case would not be granted.

Having been unable to obtain any such information, even though expressly requested, we are of the opinion that the relator should have the right to the relief asked for, with the restriction that such right shall be exercised at reasonable times, under proper conditions, and in such a manner as to interfere as little as possible with the business of the company.

The defendant contends, finally, that even if the relator is legally entitled to the inspection and examination asked for, it should not be granted, because his demand was not made on the board of directors which alone could grant the permission.

We think this objection is technical and unreasonable. The demand was made in writing and in person upon the president of the company at its office in Philadelphia, and also upon its resident agent at the company's home office in Wilmington. This was as much as the relator could reasonably be expected to do, and perhaps all that he could do. Presumably, he did not know when the directors would meet. It was the duty of the president or resident agent to submit the relator's demand to the directors.

The court being of the opinion that the relator, having shown that the information he seeks is for a proper purpose, viz., the as-

certainment of the value of his stock, and the same having been refused, he is entitled to the relief asked for, and the defendant's motion that the petition be dismissed is, therefore, refused.

But it is also the opinion of the court that the parties should agree, if possible, what books, records and papers contain the information sought, and the inspection and examination be confined to them. If there is no such agreement, then the peremptory writ of mandamus should be issued by the Superior Court under such reasonable regulations as to time and place as it may direct, commanding the defendant to suffer and permit the relator, or his duly constituted attorney, to inspect and make copies of such of the books, papers, accounts and writings of the defendant mentioned in his petition, and only of such of them that under the direction of the said court are found essential and sufficient to furnish the information whereby the relator may determine the value of his stock. *State ex rel. Brumley v. Jessup & Moore Paper Co.*, 1 *Boyce* 379, 77 *A.* 16, 30 *L. R. A.* (*N. S.*) 290.