**FLEISHER DEVELOPMENT CORPORATION, et al.,**
**Plaintiffs,**

v.

**HOME OWNERS WARRANTY CORPORATION, et al.,**
**Defendants.**

**Civ. A. No. 85–1766.**

United States District Court,
District of Columbia.

Oct. 24, 1986.

Order Oct. 29, 1986.

William E. Rollow, Arlington, Va., for plaintiffs.

William Casano, Washington, D.C., for defendants.

## MEMORANDUM–ORDER

GASCH, District Judge.

### I.  STATUS OF THE CASE

This case follows on the heels of *Fleisher Development Corporation, et al. v. Home Owners Warranty Corporation, et al.,* No. 85–1766 (D.D.C. Jun. 17, 1986) (*"Fleisher I"*) [Available on WESTLAW, DCTU database].  In *Fleisher I*, the Court denied the motion of the defendants, Home Owners Warranty Corporation, et al. ("HWC"),[1] to dismiss or transfer the case brought by the plaintiffs, Fleisher Development Corporation, et al. ("Fleisher").  The Court granted the defendants' motion to dismiss Counts I, III and IV of the complaint.  However, the Court refused to grant the defendants' motion to dismiss Count II of the complaint, which sought an order granting the plaintiffs the right to inspect HWC'S members list, corporate books and records.  The Court suggested that

> [T]he issue of plaintiffs' rights to inspect the books of the corporate defendants should more properly be resolved in a motion for summary judgment.

*Fleisher Development Corporation, et al.,* at 11.  The Court made this suggestion because several key issues of law were not briefed in *Fleisher I:* whether the plaintiffs have a right of inspection under the applicable law;  whether the plaintiffs who made a demand for inspection asserted a "proper purpose";  whether the right to inspect the books of a nonstock corporation extends to the books of its wholly-owned subsidiaries;  and whether the plaintiffs who did not make a demand for the books, records and membership list are barred by lack of standing.  The Court today addresses these questions.

### II.  FACTS

The facts of this case are thoroughly considered in *Fleisher I.*  Nevertheless, the relevant facts will be reiterated here.  Plaintiffs, builders and developers of residential housing, are members of the Home

---

1. Throughout this opinion the acronym HWC will be used to denote the Home Owners Warranty Corporation and its subsidiaries.  Home Owners Warranty Corporation itself will be referred to by its proper name.

Warranty Corporation, a nonstock, profit-making mutual. This corporation is incorporated in Delaware and has its principal office in the District of Columbia. The corporation is an umbrella organization overseeing two wholly-owned subsidiaries: Home Owners Warranty Corporation ("HOW") and the HOW Insurance Company ("HOWIC").

HOW is incorporated in the District of Columbia, and its principal office is likewise in the District. Through HOW, the Home Warranty Corporation administers a homeowners warranty program for the benefit of member-builders like the plaintiffs. Enrollees in the HOW program warrant that the homes they build are free from specified defects for specified periods of time. Through the use of trademarks and advertising, HOW promotes the warranty program as a sales tool for its members.

Members are also eligible to obtain insurance covering the cost of repair or replacement, within specified periods of time, resulting from certain defects in the warranted homes. This service is provided by Home Warranty Corporation's second subsidiary, the HOW Insurance Company ("HOWIC"). HOWIC, like its parent, is incorporated in Delaware and has its principal office in the District of Columbia.

The instant action arose in 1983 when several of the plaintiffs[2] made demand upon the defendants, by a written document, under oath, requesting permission to inspect the books, records, and membership lists of all the defendant corporations. The plaintiffs' request embraced, *inter alia*, the following items: a current list of the builder-members of HWC, minutes from each meeting of the Board of Directors, and Executive Committee, annual meeting, and all special meetings of the builder-members from January 1, 1983; copies of all financial information filed with the federal government, Delaware, and

New Jersey from January 1, 1983; lists of all the officers and directors of HWC and all distributions paid to these officers and directors since January 1, 1983; and finally, any reports filed with regulatory bodies, any reports prepared by certified public accountants, and a list of enrolled builder-members' capital contributions. *See* Letter from Thomas A. Paparone (member-builder) to Hamilton H. Boykin (Secretary of HWC) (April 16, 1985).

The plaintiffs grounded their request to inspect HWC's corporate books and records on their desire to achieve the following objectives:

The plaintiffs grounded their request to inspect HWC's corporate books and records on their desire to achieve the following objectives:

(a) To apprise the undersigned Builder Member of the financial and operating condition of the Mutual Company namely Home Warranty Corporation (and its subsidiaries) of which it is a member. (b) To allow the undersigned Builder Member to ascertain whether or not the Mutual Company of which he is a member, namely Home Warranty Corporation and its subsidiaries, are being prudently managed, particularly with regard to its fiscal affairs; (c) To allow the undersigned Builder Member to ascertain whether the rates being charged to Builder Members (whether on a progressive scale or not) are being applied uniformly to Builder Members; (d) For such other purposes as may be legal and proper.

*Id.* Alternatively, to support their request to inspect HWC's membership list, the plaintiffs wrote, "The list of Builder Members is requested solely for purposes of communicating with other Builder Members concerning the Corporation's affairs." *Id.* In both cases, each plaintiff who made demand claimed that it was acting in good

---

**2.** It is undisputed that plaintiffs, Mack & Mack, Inc. and Talcott Corporation did not make demand to inspect the books and records of the defendants. *See* Affidavit of Nancy K. Grady. Because these plaintiffs did not make a formal demand to inspect, the defendants conclude that these plaintiffs do not have standing to assert Count II. This argument is addressed *infra* at 670.

faith. To assure the defendants that all information released would be protected, each plaintiff agreed that,

> The undersigned Builder Member warrants and agrees that it will not disclose such information to any party other than to (1) Its officers, attorneys, and/or accountants or (2) to such court or courts as may be appropriate; or (3) to such other Builder Members of Home Warranty Corporation as may have a common interest in the well-being of said corporation, the name of which will be supplied in advance to Home Warranty Corporation and which, likewise agreed to keep such information confidential.... [T]he information herein requested will not be disclosed to any competitors of Home Warranty Corporation.

*Id.*

Though HWC claimed to be ready, willing and able to comply with requests for information, supported by a proper purpose, the corporation rejected all of the plaintiffs' requests for inspection. The requests were denied on the ground that all the purposes articulated by the plaintiffs were deficient.

## III. DISCUSSION

### A. *Jurisdiction*

The present controversy is in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1331. In diversity cases, a federal court is bound to apply the state law of the jurisdiction in which it resides to resolve substantive issues, *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), and a state's choice of law rules is a substantive issue under *Erie*. *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The District of Columbia has adopted the governmental interest analysis approach to resolve choice of law questions. *Williams v. Williams*, 390 A.2d 4, 5 (D.C.1978). This approach requires a court "to evaluate the governmental policies underlying the applicable conflicting laws and to determine which

jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Id.* at 5–6.

Notwithstanding this general approach, such balancing cannot be undertaken when the Supreme Court requires a court to refuse jurisdiction for some special reason. In *Rogers v. Guaranty Trust Company of New York*, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933), the Supreme Court held as follows:

> It has long been settled doctrine that a court—state or federal—sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs *of a corporation organized under the laws of another State* but will leave controversies as to such matters to the courts of the State of the domicile.

*Id.* at 130, 53 S.Ct. at 297 (emphasis added). Of the three defendants, only HOW is organized under the laws of the District of Columbia. Thus, if the matter before the Court concerns "internal affairs," *Rogers* compels the conclusion that the Court must decline jurisdiction with regard to the two corporations at issue not organized under the laws of the District of Columbia.

■ Resolution of this jurisdictional question requires the Court to determine whether a request to inspect the membership list, books and records of HWC constitutes an invasion of the internal affairs of those corporations. All of the cases uncovered support the conclusion that shareholders' or members' rights to inspect corporate books and records do not touch upon the internal affairs of a corporation where such books are within the jurisdiction of the reviewing court. *See, e.g., Genetti v. Victory Markets, Incorporated*, 362 F.Supp. 124, 126 (M.D.Pa.1973); *Donna v. Abbotts Dairies, Incorporated*, 399 Pa. 497, 161 A.2d 13, 16 (1960); *McCormick v. Statler Hotels Delaware Corporation*, 55 Ill.App.2d 21, 203 N.E.2d 697, 703 (Ill.App. Ct.1964); Restatement (Second) of Conflict of Laws § 313 (1971). Apparently, this is the majority rule. *McCormick, supra*, 203 N.E.2d at 703. The defendants do not con-

test the plaintiffs'· assertion that all the defendants' books and records are housed in the District of Columbia, *see* Plaintiffs' motion supporting summary judgment at 11. As such, the plaintiffs' claims fall without the *Rogers* doctrine, and this Court retains jurisdiction.[3]

### B. *Choice of Law*

As stated earlier, when there is jurisdiction, the District of Columbia requires its courts to weigh the governmental policies underlying the applicable conflicting laws of competing jurisdictions. *Williams, supra*, 390 A.2d at 5. The parties in this case dispute whether the law of the District of Columbia or of Delaware ought to control.

Fleisher would have this Court apply the statutory law of the District of Columbia. HWC argues for the application of a Delaware statute. In *Fleisher I*, the Court stated that the District of Columbia "does have a statute governing such a right [of inspection] in regard to nonprofit corporations such as HWC." *Fleisher Development Corporation, et al., supra*, at 10. The Court reached this conclusion upon consideration of D.C.Code Ann. § 29–526 (1981), which states in pertinent part, that "[A]ll books and records of a corporation may be inspected by any member having voting rights, or his agent or attorney, for any proper purpose at any reasonable time." This provision, however, only states the law with regard to nonprofit corporations. *See* D.C.Code Ann. § 29–501 (1981).[4] In *Fleisher I*, the Court held that HWC is a nonprofit corporation. To the contrary, both parties now agree that HWC is a profit-making corporation. *See* Defendants' Opposition to Plaintiffs' Motion for

Summary Judgment at 5; Plaintiffs' Reply at 8. As such, HWC would ordinarily be subject to the District of Columbia inspection statute applicable to business corporations. *See* D.C.Code Ann. § 29–345 (1981). However, the right to inspection under this provision is predicated on "five per centum or more [ownership] of all of the outstanding shares of a corporation...." HWC, however, is a nonstock corporation. As a for-profit but nonstock corporation, HWC is unaffected by any District of Columbia statute regulating the inspection of corporate books, records and membership lists.

On the ground that District of Columbia law is inapposite and that Delaware has a statute arguably applicable to HWC and its subsidiaries, the defendants urge that Delaware is the more interested state. The Delaware Corporation Code provides, in relevant part, that,

> [A]ny *stockholder* ... shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records....

Del.Code Ann. Tit. 8 § 220 (1983) (emphasis added). In *Fleisher I*, this Court held, "[T]here does not appear to be any separate Delaware statute concerning the rights of a member of a nonstock corporation to inspect books and records of such a corporation." *Fleisher Development Corporation, et al., supra*, at 10. Notwithstanding the fact that Section 220 of the Delaware Corporation Code is couched in terms of stockholders, the defendants argue that the statute applies with equal

**3.** This conclusion is bolstered by other considerations identified in *Rogers, supra*, 288 U.S. at 131, 53 S.Ct. at 298. Having espoused its general rule, the *Rogers* court noted that "it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of domicile as appropriate tribunals for the determination of the particular case." *Id.* In view of the fact that all of the defendants maintain their principal offices and books and records in the District of Columbia, and that this Court is familiar with the facts of the case

at bar, dismissal would result in the wasting of precious judicial resources.

**4.** D.C.Code Ann. § 29–502(3) (1981) states that not for profit corporation means "a corporation no part of the income of which is distributable to its members, directors, or officers; except nothing in this chapter shall be construed as prohibiting the payment of reasonable compensation for services rendered and the making of distribution upon dissolution of final liquidation as permitted in this chapter."

force to members of nonstock corporations.[5]

As noted in *Fleisher I,* by its own terms, Section 220 only applies to stockholders. Statutory construction and case law in Delaware support the conclusion that this express meaning should be credited. Within the universe of subchapter VII only one section pointedly begins by defining what it means by the term stockholder: Section 220. That section states, "as used in this section, 'stockholder' means a stockholder of record." Del.Code Ann. tit. 8 § 220(a) (1983). The use of the express term stockholder and an attendant definition of that term, which exludes members of nonstock corporations, is formidable evidence that the Delaware legislature did not intend Section 220 to apply to nonstockholding members.

Although no legislative history has been provided to the Court, the plaintiffs' position is bolstered by the statutory interpretation of the judiciary of Delaware and the common law of that state. In *Northwest Industries, Inc. v. B.F. Goodrich Company,* 260 A.2d 428, 429 (Del.1969), the Supreme Court of Delaware considered what kind of purpose would be proper under Section 220 to make demand for an inspection of corporate books and records effective. To arrive at its conclusion, the Supreme Court scrutinized the language of Section 220. Based on the "juxtaposition" of the terms in Section 220, the Court concluded that a proper purpose under the statute is "a purpose reasonably related to the demander's interest as a stockholder." *Id.* Cases following *Northwest Industries* have interpreted the State Supreme Court as narrowly construing Section 220. *See Willard v. Harrworth Corporation,* 258 A.2d 914 (Del.Ch.1969). Likewise, in *Kerkorian v. Western Air Lines, Incorporated,* 253 A.2d 221, 223 (Del.Ch.1969), *aff'd, Western Air Lines, Incorporated v. Kerkorian,* 254 A.2d 240 (Del.1969), a Delaware court held that Section 220 was to be interpreted on the basis of a "statutory formality or mechanic now required by *Northwest Industries.*" These cases would seem to corroborate the plaintiffs' reading of Section 220 as expressly limiting the statute to its plain meaning.

Furthermore, there is a line of cases in Delaware holding that

> Under the common law a stockholder had the right to examine the books and records of the company, and that right could not be taken away *except by statute that expressly or by necessary implication authorized it.*

*State ex rel. Cochran v. Penn-Beaver Oil Company,* 34 Del. 81, 143 A. 257, 259 (1926) (emphasis added); *State ex rel. Healy v. Superior Oil Corporation,* 40 Del. 460, 13 A.2d 453, 454 (Del.Super.Ct.1940). The common law stood prepared to find the inspection purpose of a shareholder proper upon a lesser showing than is required today in Delaware. *Compare Guthrie v.*

---

**5.** The defendants argue that Section 220 applies to both stock and nonstock corporations. They arrive at this conclusion on the basis of statutory construction. Subchapter VII of the Delaware Corporation Code addresses "Meetings, Elections, Voting and Notice." The subchapter embraces Sections 211 through Section 230. The defendants point out that like Section 220, the inspection section, Sections 211 through 214 and 216 speak only in terms of stockholders and stock corporations with no reference made to members or membership corporations. Utilizing the plaintiffs' test for determining the intent of the Delaware legislature, the defendants argue, the Court would conclude that these provisions do not apply to membership corporations because of their stockholder terminology. However, the defendants believe that Section 215(a) contravenes this reasoning. Section 215(a) states: "Sections 211–214, and 216 of this title shall not apply to corporations not authorized to issue stock." Del.Code Ann. tit. 8 § 215(a) (1983). On the basis of this provision, the defendants argue by negative inference that the Delaware legislature must have intended subchapter VII to apply to nonstock corporations in every section where such nonstock corporations were not expressly exempted. The defendants conclude that since the Delaware legislature failed to name Section 220 as one of these sections made applicable to membership corporations, Delaware must have intended to make Section 220 applicable to nonstock corporations. Although the defendants credibly explicate Section 220, they provide no legislative or judicial support for their position. On this basis, the Court refuses to expand Section 220 beyond its plain meaning.

*Harkness,* 199 U.S. 148, 154–155, 26 S.Ct. 4, 5–6, 50 L.Ed. 130 (1905) and *Northwest Industries, Incorporated, supra,* 260 A.2d 428. The defendants' interpretation of Section 220 would force this Court to limit the plaintiffs' common law right of inspection, in contravention of the common law rule of *State ex rel. Cochran.* The Court is not disposed to imply the applicability of Section 220 since the statute neither expressly nor by necessary implication authorizes this limitation of the plaintiffs' rights. It seems the province of the Delaware judiciary, not this Court, to expand the scope of Section 220. All indications from that bench support the conclusion that Section 220 ought not to be construed beyond its plain meaning.

 The Court thus concludes that neither the statutes of the District of Columbia nor those of Delaware govern the controversy before the Court. In such cases, resort must be had to the common law. The courts of the District of Columbia have never passed on any question relating to a shareholder or nonstock members' common law right to inspect a corporation's books, records, or membership lists. Delaware courts have confronted this question on several occasions. On the basis of governmental interest analysis, Delaware would seem to have a greater interest in the application of its common law. As such, the Court will, wherever possible, rely on that state's rulings. Where the courts of Delaware are silent, the Court will rely on discernible trends in the common law as stated in other jurisdictions.

### C. *The Common Law Right to Inspect*

The common law has always recognized the right of shareholders to inspect the books and records of corporations to which they belong upon a showing of a proper purpose. The United States Supreme Court recognized this general rule in *Guthrie v. Harkness,* 199 U.S. 148, 154–155, 26 S.Ct. 4, 5–6, 50 L.Ed. 130 (1905), where the Court wrote,

There can be no question that the decisive weight of American authority recognizes the common law right of the shareholder, for proper purposes and under reasonable regulations as to place and time, to inspect the books of the corporation of which he is a member.

*Id.* at 153, 26 S.Ct. at 5. The dominance of this common law rule has never been altered. *See, e.g., Sarni v. Meloccaro,* 113 R.I. 630, 324 A.2d 648, 653 (1974) (upholding shareholder's common law right to inspect corporate books prior to Rhode Island's enactment of a statutory right of inspection); *Parish v. Maryland & Virginia Milk Producers Association,* 250 Md. 24, 242 A.2d 512, 547 (1968), *aff'd,* 261 Md. 618, 277 A.2d 19, *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *State ex rel. Cochran, supra,* 143 A. at 259; Model Business Corp. Act § 16.02 (1985). Moreover, although nearly every jurisdiction has passed a statute addressing shareholders' and members' right to inspect corporate books and records, such legislation has generally supplemented not supplanted the common law right to inspect. *See, e.g., Crane Company v. Anaconda Company,* 39 N.Y.2d 14, 382 N.Y. S.2d 707, 346 N.E.2d 507 (1976); *Tucson Gas and Electric Company v. Schantz,* 5 Ariz.App. 511, 428 P.2d 686 (1967); *State ex rel. Fussell v. McLendon,* 109 So.2d 783, 786 (Ct.App.Fla.1959); Model Business Corp. Act § 16.02 (1985). *But see Caspary v. Louisiana Land & Exploration Company,* 707 F.2d 785 (4th Cir.1983) (Maryland *shareholders'* right to inspection superseded by statute). Finally, although there are few cases addressing nonstock corporate members' right to inspect the corporate books and records, those courts considering the issue appear to have extended the common law right to inspect to such nonstock members. *See Parish, supra,* 242 A.2d at 549; *Bill Reno, Incorporated, v. Rocky Mountain Ford Dealers Advertising Association,* 151 Colo. 406, 378 P.2d 206, 207 (1963); *see also* 18A Am.Jur.2D Corporations § 354 (1985).

■ Whether a stockholder or a member, the common law requires the assertion of a "proper purpose" before a corporation must yield up its books, records and membership lists to a request for inspection. *See, e.g., Guthrie, supra,* 199 U.S. at 154–155, 26 S.Ct. at 5–6; *Parish, supra,* 242 A.2d at 547; *State ex rel. Miller v. Loft Incorporated,* 34 Del. 538, 156 A. 170, 172 (Del.Super.Ct.1931). Unlike many state statutes, the burden of proving a proper purpose for any kind of inspection is always on the party requesting the inspection under the common law. *Parish, supra,* 242 A.2d at 547; *State ex rel. Miller, supra,* 156 A. at 172; Model Business Corp. Act § 16.02 (1985). As a consequence of these rules, plaintiff-Fleisher has the right to inspect HWC's books and records only if it can sustain its burden of proving a proper purpose for inspection.

The pivotal question is what constitutes a proper purpose under the common law. The defendants claim that the right to inspection is contingent upon an allegation of corporate mismanagement or misfeasance. Defendants' Motion for Summary Judgment at 16. In fact, the common law requires no such allegations or proof. Rather, the common law is lenient in its definition of the burden a party requesting inspection of corporate books and records must surmount. Applying the test articulated in *Guthrie,* the plaintiffs in this case will be entitled to inspect, "though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers." *Guthrie, supra,* 199 U.S. at 154–155, 26 S.Ct. at 6. The Supreme Court explained the laxity of this burden as follows:

> Such a right is necessary to their [shareholders'] protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases....

*Id.* The *Guthrie* Court held it clearly improper to request inspection, "for speculative purposes or to gratify idle curiosity or to aid a blackmailer." *Id.* at 156, 26 S.Ct. at 6. In sum, the Supreme Court wrote, the right to inspect should "not be denied to the stockholder who seeks the information for legitimate purposes." *Id.*

■ Fleisher's purposes for inspecting HWC's books and records is manifestly proper under the *Guthrie* standard. *Guthrie* is satisfied by inquiries designed to ascertain whether corporate directors are properly conducting the affairs of the businesses of which they are in charge. The stated purpose of Fleisher's request to inspect was to ascertain whether the mutual company was being prudently managed, particularly with regard to its fiscal affairs. *See* Letter from Thomas A. Paparone (member-builder) to Hamilton H. Boykin (HWC secretary) (April 16, 1985). Fleisher actually surpassed the Supreme Court's requirements; for, the plaintiff also articulated a desire to determine the financial and operating conditions of HWC and to ascertain whether the rates being charged to builder-members were being applied uniformly. *Id.* Such purposes comport with the Supreme Court's policy of protecting shareholders. In addition, the defendants have proffered no evidence that the plaintiff's motives are clearly improper. To allay any concerns about the legitimacy of their purposes, the plaintiffs' letters to HWC expressly assured good faith and promised to keep any sensitive material confidential. Thus, the Court concludes that the plaintiffs have satisfied their common law burden of proving a proper purpose to inspect HWC's corporate books and records.

■ However, the plaintiffs stated a different purpose for inspecting the list of builder-members. In their letters to HWC, the plaintiffs requested this list "solely for purposes of communicating with other builder-members concerning the corporation's affairs." *Id.* Upon receipt of this

request, defendant, HWC, responded to the plaintiffs as follows:

> HWC makes its membership list available to inspection by members upon the demonstration of a "proper purpose." Your statement that you wish to communicate with other members about corporate affairs is insufficient to establish what exactly the purpose of your request is and whether it is proper. Once you submit to HWC a statement showing the substance of your intended communication to members sufficient to permit a determination by HWC of whether a reasonable relationship exists between your intended communication and your interest as a member, and assuming such statement demonstrates a proper purpose, HWC will then promptly make the membership list available for your inspection.

Letter from Hamilton H. Boykin (HWC Secretary) to Thomas A. Paparone (member-builder) (April 22, 1985). It is uncontested that none of the plaintiffs provided any additional information as to the proposed substance of their communications with the other member-builders. Moreover, it is uncontested that in 1984 and 1986 the defendants made HWC's membership list available to the plaintiffs upon a proper request. *See* Plaintiffs' Reply to Defendant's Opposition at 7 n. 1. Although the *Guthrie* standard requires little specificity, a right to inspect corporate books and records will not attach when a requester's purposes are completely unknown. *See Guthrie, supra,* 199 U.S. at 156, 26 S.Ct. at 6. As the plaintiffs provided no substantive purpose beyond a desire to communicate with fellow members, the Court concludes that they have not satisfied their burden of proof; no proper purpose has been demonstrated under the common law.

Thus, the Court grants the plaintiffs' motion for summary judgment as to the issue of their right to inspect HWC's corporate books and records. But, the Court grants the defendants' motion for summary judgment with respect to the plaintiffs' request to inspect HWC's membership list.

### D. *Right to Inspect Subsidiaries' Books and Records*

█ Despite the Court's holding that plaintiffs are entitled to inspect the books and records of Home Warranty Corporation, the defendants nonetheless deny that the plaintiffs have the right to inspect the books and records of the corporation's subsidiaries, HOW and HOWIC. Delaware case law generally recognizes that absent a showing of fraud, the separateness of corporate entities will be recognized. *Stauffer v. Standard Brands Incorporated,* 40 Del Ch. 202, 178 A.2d 311, 316 (Ch. 1962), *rev'd in part on other grounds,* 407 A.2d 1032 (1978). The defendants claim that all the corporations at issue separate entities. They claim, for example, that the Home Warranty Corporation has assets of $11 million and its own board of directors.

These assertions, however, fly in the face of findings made by this Court in *Fleisher I* which inured to the benefit of the defendants in that action. In *Fleisher I,* the Court held that there was a close interrelationship between the entities comprising HWC. *See Fleisher Development Corporation, et al., supra,* at 3. This holding was a predicate for the Court's conclusion that the defendants were in compliance with the Risk Retention Act of 1981, 15 U.S.C. § 3901 *et seq.* (1982). The Court found that, "[S]o long as HOWIC does not deny plaintiffs any rights they are entitled to as members, it does not appear necessary that they control HOWIC directly rather than through their control over [the parent corporation]." *Id.* at 6 n. 2. The defendants' own Annual Report of 1984 states, "[T]he warranty insurance program is operated through its subsidiaries, the Home Owners Warranty Corporation (HOW) and the HOW Insurance Company (HOWIC)." *See* Home Warranty Corporation 1984 Annual Report.

The Delaware judiciary is sensitive to attempts by a litigant to adopt factually inconsistent positions from one proceeding to another in an effort to benefit twice at the expense of the courts. Such action affronts the courts and is not tolerated in Delaware, *see Levien v. Sinclair Oil Corporation,* 314 A.2d 216, 222–23 (Ch. 1973); *Old Charter Distillery Company v. Continental Distilling Corporation,* 174 F.Supp. 312, 324 n. 74 (D.Del.1959); *Adams v. Clearance Corporation,* 35 Del.Ch. 459, 121 A.2d 302, 308 (Del.Sup.1956), and will not be permitted in this Court.

Thus, the Court concludes that the plaintiffs should be permitted to inspect the books and records of the defendant subsidiary corporations. Holding otherwise would impermissibly benefit the defendants and would thwart the plaintiffs' purpose in bringing this lawsuit. Because HWC's warranty/insurance program is operated through HOW and HOWIC, evidence of corporate mismanagement, if it exists, will likely be found in the books and records of these subsidiaries. To deny the plaintiffs the right to inspect HOW's and HOWIC's files would contravene the Supreme Court's concern for shareholders as outlined in *Guthrie v. Harkness,* 199 U.S. at 154–155, 26 S.Ct. at 5–6.

### E. *Standing*

■ The final issue raised by this case is whether the plaintiffs, Macks & Macks, Inc. and Talcott Corporation have standing to assert a right to inspect the books and records of HWC. It is uncontested that neither of these plaintiffs ever formally requested that HWC allow them to inspect its books and records. This failure to make a demand raises the question of whether these plaintiffs have standing in this case. The Supreme Court has written,

In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case....

*Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974). In *Warth,* the Supreme Court concluded that

A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...."

*Id.* at 499, 95 S.Ct. at 2205. Since the plaintiffs here have made no demand to inspect, they can claim no injury as a result of HWC's refusal to allow inspection of its books and records. Thus, on the basis of the Constitution, the plaintiffs seem to lack standing.

In addition, decisions of the Delaware courts establish that demand on the part of a stockholder and refusal on the part of a corporation must be shown before the common law will allow inspection. *See Swift v. State,* 6 A. 856, 861 (1866). Thus, on the basis of the United States Constitution and the common law of Delaware, the jurisdiction most interested in this controversy, the Court concludes that Macks & Macks, Inc. and Talcott Corporation have no standing and therefore are dismissed as plaintiffs.

### ORDER

Upon consideration of defendants' motion for summary judgment seeking an order from this Court denying plaintiffs access to any of the books and records of either Home Warranty Corporation or its wholly owned subsidiaries, Home Owners Warranty Corporation and Home Owners Warranty Insurance Company, and

Upon consideration of plaintiffs' cross-motion for summary judgment seeking an order granting them access to the books and records of all of said corporations, subject to such limitations and constraints as this Court deems proper, and

It appearing to this Court that there is no issue as to any material fact and that the issue presented by the cross-motions can be resolved as a matter of law,

Upon the entire record herein, it is by the Court this 29 day of October, 1986

ORDERED: That defendants' motion for summary judgment be and hereby is granted to the extent that the plaintiffs may not inspect the membership list of Home Warranty Corporation or any of its wholly owned subsidiaries; defendants' motion for summary judgment is denied in all other respects; it is further

ORDERED: That the plaintiffs' motion for summary judgment is granted to the extent that the plaintiffs may inspect the books and records of Home Warranty Corporation, and its aforesaid wholly owned subsidiaries, subject to the following terms and conditions:

1. The inspection shall take place, after advance notice to defendants of at least seven (7) days, at the headquarters of defendant in Washington, D.C. during normal business hours.

2. The inspection shall be conducted by plaintiffs or their duly authorized attorneys, accountants and/or other duly authorized agents, whose names shall be supplied to defendants seven (7) days in advance of said inspection.

3. Plaintiffs shall not reveal any confidential information or proprietary information so obtained to any parties other than themselves and their aforesaid agents, a court, or such other members of Home Warranty Corporation who agree, in writing, and in advance, to maintain the confidentiality of such information.