**FLEISHER DEVELOPMENT CORPORATION, et al.,**
Plaintiffs,

v.

**HOME OWNERS WARRANTY CORPORATION, et al.,**
Defendants.

**Civ. A. No. 85-1766.**

United States District Court,
District of Columbia.

July 8, 1987.

William E. Rollow, Arlington, Va., for plaintiffs.

William C. Casano, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, Senior District Judge.

### I. INTRODUCTION

On October 29, 1986, the Court granted plaintiffs Fleisher Development Corporation, *et al.*, the right to inspect the books and records of defendant Home Warranty Corporation and its subsidiaries, Home Owners Warranty Corporation and Home Owners Warranty Insurance Company.[1] *See Fleisher Development Corp. v. Home Owners Warranty Corp.*, 647 F.Supp. 661, 668 (D.D.C.1986) (*"Fleisher II"*). Because *Fleisher II* was brought pursuant to the diversity statute, 28 U.S.C. § 1332, a threshold consideration in the case was a determination of the applicable law. The District of Columbia's choice of law rules required the Court to weigh the governmental policies underlying the law of the District of Columbia and of Delaware. *See Williams v. Williams*, 390 A.2d 4, 5 (D.C. 1978). Fleisher pressed for the application of the statutory law of the District of Columbia. HWC maintained that the statutory law of Delaware was most appropriate.

Upon consideration of both statutes, the Court found neither applicable to the instant case, since it involves the right of members of a nonstock profit-making mutual to inspect their corporation's books and records. Therefore, the Court held that "resort must be had to the common law." *See Fleisher II, supra*, 647 F.Supp. at 667. Finding that the courts of the District of Columbia had never passed on the question of a shareholder's or nonstock member's common law right to inspect a corporation's books and records, the Court found that the District of Columbia had little interest in applying its law to this controversy. To the contrary, the Court wrote that

Delaware courts have confronted this question on several occasions. On the basis of governmental interest analysis, Delaware would seem to have a greater interest in the application of its common law. As such, the Court will, wherever possible, rely on that state's rulings. Where the courts of Delaware are silent, the Court will rely on discernible trends in the common law as stated in other jurisdictions.

*Id.* Neither the plaintiffs nor the defendants questions the propriety of this ruling.

In defining the parameters of Delaware's common law right to inspect a corporation's books and records, the Court relied on a decision of the United States Supreme Court which appeared to state the position of the Delaware judiciary. *See Guthrie v. Harkness*, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130 (1905).[2] In their motion to amend the judgment, the defendants challenge the vitality of this precedent in Delaware. They claim that the decisions of the Delaware courts have more recently established a common law right to inspect a corporation's books and records which is narrower than the one found by the Supreme Court in *Guthrie*. Furthermore, the defendants maintain that the plaintiffs' request to inspect HWC's books and records failed to satisfy the requirements of the prevailing Delaware common law rule. A review of the cases proffered by the defendants persuades the Court that the Delaware judiciary has revisited the issue under review and has departed from the rule set down by the Supreme Court in *Guthrie*. Thus, the Court will grant the defendants' motion to amend the Court's judgment, in part, limiting the plaintiffs' access to HWC's books and records to those which address the one proper purpose stated by the plaintiffs.

### II. DISCUSSION

Delaware recognizes both a statutory right to inspect a corporation's books and

---

1. Throughout this memorandum the acronym HWC will be used to denote all of these corporations.

2. *Guthrie v. Harkness*, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130 (1905), was cited approvingly by the Delaware Supreme Court in *Brumley v. Jessup & Moore Paper Co.*, 24 Del. 379, 77 A. 16, 21–22 (1910).

records, Del.Code Ann. tit. 8 § 220 (1983), and a common law right permitting the same. *See Miller v. Loft,* 34 Del. 538, 156 A. 170, 171 (Del.Super.Ct.1931). The statutory right supplements and does not supplant the common law right to inspect books and records. *See, e.g., Henshaw v. American Cement Corp.,* 252 A.2d 125, 128 (Del.Ch.1969). *Cf. Theile v. Cities Service Co.,* 31 Del. 514, 115 A. 773, 777 (Del. 1922) (common law right to inspect stock ledger not supplanted by statutory provision providing for same). In this case, Delaware's inspection statute does not consider the right of members to inspect mutual corporation's books and records. *See Fleisher II, supra,* 647 F.Supp. at 665–68. Since statutory law is inoperative, the common law controls. *See, e.g., Henshaw, supra,* 252 A.2d at 128.

Delaware common law treats petitions to examine a corporation's books and records as applications for a writ of mandamus. *See, e.g., Nodana Petroleum Corp. v. State,* 50 Del. 76, 123 A.2d 243, 244 (Del. 1956); *Miller, supra,* 156 A. at 171–72; *Brumley,* 77 A. at 17. *Cf. Guthrie, supra,* 199 U.S. at 156, 26 S.Ct. at 6–7. Such a writ will issue only when a court, in its sound discretion, determines that the facts presented justify inspection. *See Miller, supra,* 156 A. at 172. *Cf. Guthrie, supra,* 199 U.S. at 156, 26 S.Ct. at 6–7. In exercising this discretion, Delaware courts recognize that a stockholder or member's right to inspect a corporation's books and records is a qualified one. Inspection will be ordered only if a member establishes a proper purpose for the inspection. *Nodana Petroleum Corp., supra,* 123 A.2d at 246; *Miller, supra,* 156 A. at 172. *Cf. Guthrie, supra,* 199 U.S. at 153, 26 S.Ct. at 5. As stated in *Fleisher II,* "the pivotal question is what constitutes a proper purpose under the common law." *Fleisher II, supra,* 647 F.Supp. at 668. In its October, 1986, Memorandum, the Court answered this question as follows:

> [T]he common law is lenient in its definition of the burden a party requesting inspection of corporate books and records must surmount. Applying the test articulated in *Guthrie,* the plaintiffs

in this case will be entitled to inspect, 'though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers.' *Guthrie, supra,* 199 U.S. at 154–55, 26 S.Ct. at 6. The Supreme Court explained the laxity of this burden as follows:

> Such a right is necessary to their [shareholders] protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. . . .

*Id.* The *Guthrie* court held it clearly improper to request inspection, 'for speculative purposes or to gratify idle curiosity or to aid a blackmailer.' *Id.* at 156, 26 S.Ct. at 6. In sum, the Supreme Court wrote, the right to inspect should 'not be denied to the stockholder who seeks the information for legitimate purposes.' *Id.*

*Id.* The stated purpose of Fleisher's request to inspect was, *inter alia,* to determine whether the mutual company was being prudently managed, particularly with respect to its fiscal affairs. *See* letter from Thomas A. Paparone (member-builder) to Hamilton H. Boykin (HWC secretary) (April 16, 1985) ("Paparone Letter"). Applying the *Guthrie* standard to the aforementioned purpose, the Court concluded that the plaintiffs' purpose was a proper one and comported with the Supreme Court's policy of protecting shareholders' interests. Because there was no evidence of bad faith on the part of the plaintiffs, the Court ruled that they were entitled to inspect the books and records of HWC pursuant to the teaching of *Guthrie.*

In their motion to amend the judgment, the defendants claim that there is one significant distinction between the *Guthrie* rule and the right to inspect found by the Delaware courts. Under the Supreme Court's formula, there is a presumption that inspection will go forward unless it is "for speculative purposes or to gratify idle curiosity or to aid a blackmailer." *Guth-*

*rie, supra,* 199 U.S. at 156, 26 S.Ct. at 6. To the contrary, Delaware has created a presumption against permitting inspection of a corporation's books and records unless there is a specific dispute between the shareholder or member and the corporation in aid of which examination is necessary. *See* Annot., 15 A.L.R.2d 11, 21 (1951). Delaware requires a plaintiff to plead this proper purpose with particularity. A plaintiff's failure to be sufficiently specific will result in the dismissal of his request to inspect for failure to make out a *prima facie* case of proper purpose. *See Nodana Petroleum Corp., supra,* 123 A.2d at 246; *Henshaw, supra,* 252 A.2d at 129; *Miller, supra,* 156 A. at 172; *Brumley, supra,* 77 A. at 22. Delaware appears to have added this requirement to ensure that an inspection will advance the interests of the corporation and is not a mere "fishing expedition." *Nodana Petroleum Corp., supra,* 123 A.2d at 246; *Miller, supra,* 156 A. at 172.

A survey of the relevant Delaware cases is illustrative. Those courts considering the issue have uniformly denied common law inspection of a corporation's books and records where the requisite specificity of pleading is lacking. In *Nodana Petroleum Corp., supra,* 123 A.2d 243, a mandamus action was commenced to compel inspection of the books and records of the Nodana Petroleum Corporation. In considering whether a proper purpose was alleged, the Court considered two letters transmitted by the inquiring stockholder to the corporation. The first letter stated the stockholder's purpose as follows:

> As you know, I am the owner of a substantial interest in the Company and have become concerned that improper transactions might have occurred of which I have no knowledge and which are contrary to my interests as a stockholder. . . .

*Id.* at 245. On the basis of this apprehension, the stockholder sought inspection. The Court noted that this letter had not stated a proper purpose because it was not "sufficiently specific." *Id.* at 246. A second letter sent by the stockholder was more specific, founding the desire to in-

spect on the corporation's participation in three specified transactions. For example, the stockholder questioned,

> The recent purchase by such Company of property from Richard E. Powers and William D. Walters for a purchase price of approximately $70,000 and the issuance of shares of common stock of such Company in connection with such purchase or pursuant to payment from the proceeds of such purchase.

*Id.* at 245. On the basis of this letter, the Delaware Supreme Court approved the stockholder's request for inspection of the corporation's books and records. The Court observed that although the first letter sent by the stockholder was insufficient,

> the subsequent letter of May 17 referred to three specific transactions, and although plaintiff did not specifically ask for inspection in respect to any of these matters, yet mention of them tended to show that plaintiff was not merely on a fishing expedition and that he had some specific basis for his demand. Moreover, the corporation's reply of May 23 did not raise any question of lack of particularity.

*Id.* at 246.

This principle is likewise reflected in the Delaware Supreme Court's older opinions. In *Brumley v. Jessup & Moore Paper Co., supra,* 77 A. 16, the Court considered a stockholder's petition for mandamus to examine the corporation's books and records. Inspection was requested for the purpose of ascertaining whether certain stock had been legally issued, whether certain unlawful contracts had been entered into, and finally, to ascertain the value of the shareholder's stock. To determine whether the plaintiff's purpose was proper, the Court scrutinized the mandamus petition. All those purposes for which the petitioner did not carry his burden of proof were rejected as improper. The Court allowed inspection of the corporation's books and records for the purpose of ascertaining the value of the petitioner's stock since that request represented a specific dispute and since the corporation had offered no reason why the

inspection should be disallowed. To arrive at this conclusion, the Court noted that

> the right [to inspect] is not given to gratify curiosity or for speculative purposes, but only when its exercise is sought in good faith *and for a specific purpose.* Such purpose must appear by the proofs on the application or the writ will be denied.

*Id.* at 22 (quoting *Bruning v. Hoboken Printing & Pub. Co.,* 67 N.J.L. 119, 50 A. 906 (1902)).

The decisions of Delaware's inferior courts properly follow their Supreme Court's rule. In *Henshaw v. American Cement Corp., supra,* 252 A.2d 125, the Delaware Court of Chancery upheld a petitioner's right to inspect a corporation's books and records. The petitioner was the director of a corporation. As such, he fell without the purview of section 220, which relates only to a "stockholder's right of inspection." The Court held that because the petitioner sought inspection to confirm his belief that a lawsuit brought by the corporation against certain of its directors was without merit, his purpose was a proper one. The Court wrote, "[petitioner] made out a *prima facie* right to inspection, and I am not persuaded that the Corporation has rebutted it." *Id.* at 129. Similarly, in an earlier opinion, the Delaware Superior Court ruled that

> as we have already pointed out, however, the common law right of the stockholder to examine the corporate books and records is merely a conditional right depending upon whether it is for a proper purpose. Because of that fact, such purpose must not only be proved, but must, also, be alleged not by a mere bare general statement that it is a proper one, but

by the allegation of specific facts from which the propriety of such purpose will appear.

*Miller, supra,* 156 A. at 172.[3]

Plaintiff Fleisher requested inspection of the books and records of defendants HWC for one or more of the following purposes:

> (a) To apprise the undersigned Builder Member of the financial and operating condition of the Mutual Company, namely, Home Warranty Corporation (and its subsidiaries) of which it is a member. (b) To allow the undersigned Builder Member to ascertain whether or not the Mutual Company of which he is a member, namely Home Warranty Corporation and its subsidiaries, are being prudently managed, particularly with regard to its fiscal affairs; (c) To allow the undersigned Builder Member to ascertain whether the rates being charged to Builder Members (whether on a progressive scale or not) are being applied uniformly to Builder Members; (d) For such other purposes as may be legal and proper.

*See* Paparone Letter. On the basis of the Delaware cases discussed, it is clear that inspection of the defendants' books must be denied for the purpose of determining HWC's "financial operating condition," deciding whether HWC is being "prudently managed, particularly with regard to its fiscal affairs," and for "such other purposes as may be legal and proper." None of these purposes addresses a particular dispute for which examination is necessary nor is any of these purposes stated with the particularity necessary to make out a *prima facie* proper purpose. *See Nodana Petroleum Corp., supra,* 123 A.2d at 246;

---

**3.** In *Skouras v. Admiralty Enterprises, Inc.,* 386 A.2d 674 (Del. Ch. 1978), the Delaware Court of Chancery considered a plaintiff's request to examine a corporation's books and records for the stated purpose of seeking to substantiate fears of the existence of corporate mismanagement. The Court wrote,

> it is clearly proper for a stockholder to ask leave to examine corporate books and records to follow up his suspicions of corporate mismanagement, thereby acting not only on his own behalf but on that of the corporation and its other stockholders, a purpose which plain-

tiff asserts in this action, and one which finds support in Delaware decisional law.

*Id.* at 678. Although its language is broad, this case is easily distinguished since it addresses the scope of Delaware's inspection statute, *see* Del. Code Ann. tit. 8 § 220 (1983), not the common law right to inspect. The case merely supports the proposition that the Delaware inspection statute was enacted to enlarge the right of shareholders and members to inspect corporate books and records. *See Theile v. Cities Service Co.,* 31 Del. 514, 115 A. 773, 775 (1922).

*Henshaw, supra,* 252 A.2d at 129. Thus, there is no way the defendants could reasonably ascertain that plaintiffs' requests were in the interest of the corporation and not just a fishing expedition. *See Nodana Petroleum Corp., supra,* 123 A.2d at 246.

However, Fleisher will be permitted to inspect HWC's books and records for the purpose of determining "whether the rates being charged to Builder-Members (whether on a progressive scale or not) are being applied uniformly to Builder Members." *See* Paparone Letter. This is indisputably a more specific purpose reflecting a specific question by the plaintiffs. Moreover, given the limited nature of the inquiry, it cannot be characterized as a mere "fishing expedition."

Though the plaintiffs have provided no specific facts establishing that the defendants have not created a uniform rate schedule, Delaware case law seems not to require any such proof. *See, e.g., Nodana Petroleum Corp.,* 123 A.2d at 245 (identification of a potentially improper transaction enough); *Henshaw, supra,* 252 A.2d 129 (fear that particular action of corporation is for ulterior purposes sufficient). Accordingly, in the exercise of its discretion, the Court finds Fleisher's request to inspect HWC's books and records for the limited purpose of determining whether HWC's rate schedules are improperly discriminatory particular enough to satisfy Delaware law and thus the Court will permit such inspection.

The Court emphasizes that this holding does not require HWC to throw open its books and records. Inspection is limited to those books and records which are essential to determining whether HWC's rates are being uniformly or discriminatorily applied. *See Nodana Petroleum Corp., supra,* 123 A.2d at 246; *Brumley, supra,* 77 A. at 23. Moreover, in its inspection, Fleisher cannot review any books and records which it did not request access to in its letters to HWC;[4] it is only as to these materials that a proper demand has been made. *See* Paparone Letter.[5]

4. The books and records requested by plaintiffs are as follows:
    (a) The minutes of each meeting of the Board of Directors for each of the aforenamed companies from January 1, 1983 to date.
    (b) The minutes of each meeting, if any, of the Executive Committee of the Board of Directors for each of the aforenamed companies from January 1, 1983 to date.
    (c) The minutes of each annual meeting and special meeting of Builder Members and/or shareholders, if any, of the aforenamed companies from January 1, 1983 to date.
    (d) A copy of all financial information, if any[,] filed with the State of Delaware for each year from January 1, 1983 to date on behalf of each of the aforenamed companies.
    (e) A copy of the financial information, if any, filed with the State of New Jersey for each year from January 1, 1983 to date on behalf of each of the aforenamed companies.
    (f) A list of Officers and Directors for each of the aforenamed companies from January 1, 1983 to date.
    (g) A copy of each report or statement filed with any regulatory body by each of the aforenamed companies, including but not limited to, each report filed with the regulatory body supervising insurance companies.
    (h) State and Federal Tax Returns, if any, from January 1, 1983 to date filed in behalf of the aforesaid companies.
    (i) Such books and records as will show the salaries, wages, commissions, expense allowances, reimbursement of expenses or other compensation and/or reimbursement of expenses or other repayment of any kind made to each officer and each Director of the aforenamed companies from January 1, 1983 to date.
    (j) A list of Builder Members contributing enrolled capital contributions and the amount so contributed and the date when each Builder Member's capital contribution vests.
    . . . .
    (1) Any reports prepared by Peat Marwick and Mitchell or other certified public accountants for the aforementioned companies from January 1, 1983 to date.
    *See* Paparone Letter.

5. In its motion to amend the Court's judgment, HWC also argues that newly discovered evidence raises a genuine issue of fact making summary judgment inappropriate in this case. By affidavit, Stanley Waranch, a director of HWC, declares that on October 14, 1986, he attended a meeting of the Tidewater, Virginia Builders Association. At that meeting, affiant Waranch heard that the Homeowners Warranty Corporation of New Jersey ("HOW of New Jersey"), of which some of the plaintiffs in this case are members, met with representatives of the Mid-Atlantic Insurance Corporation, a competing homeowners warranty program owned by the Tidewater, Virginia Builders Association. Mr. Waranch states that upon information and belief the purpose of the meeting was to convince HOW of New Jersey to abandon HWC and

## ORDER

Upon consideration of defendants' motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), the plaintiffs' opposition thereto, and the entire record herein, it is by the Court this 7th day of July, 1987,

ORDERED that, in conformance with the attached memorandum, defendants' motion be, and hereby is, granted to the extent that plaintiffs may only inspect the books and records of HWC relevant and essential to determining whether the rates being charged to builder-members are uniform or discriminatory; and it is further

ORDERED that plaintiffs' inspection shall not include any books and records not referenced in their original letters of request.

serve as a marketing agent for Mid-Atlantic's home warranty program or to explore the possibility of entering into a co-ownership arrangement with Mid-Atlantic. On the assumption that all of New Jersey plaintiffs in the instant case are active members of HOW of New Jersey, the affiant concludes that the New Jersey plaintiffs "may" use any documents obtained from this lawsuit to compete with HWC or to otherwise harm that corporation. On the basis of this affidavit, HWC concludes that there is now "concrete" evidence and a "very real possibility" that information obtained by the plaintiffs in this lawsuit will be used to compete with or to injure the defendants.

On the basis of this evidence, the Court is not persuaded that a genuine issue of material fact is now at issue requiring the entry of summary judgment to be postponed pending further discovery. Fleisher correctly points out that HWC's evidence is nothing more than "pure speculation based upon hearsay." Fleisher's Opposition to HWC's Motion to Amend at 20.

Moreover, this allegedly newly discovered information is based upon a meeting attended by a director of HWC on October 14, 1986—more than 10 days before this Court rendered a decision in *Fleisher II.* The fact that HWC's director neglected to convey this information to the full Board of Directors until November 6, 1987, does not make the information newly discovered; the defendants reasonably should have known of this information and brought it to the Court's attention before the final decision in this case was rendered. HWC's delay should not be permitted to work to its advantage.

Finally, there is an independent basis for denying HWC's motion for further discovery. In Fleisher's original letter of demand to HWC, the plaintiff represented that it desired inspection in good faith and offered certain safeguards to insure that no information revealed upon inspection would harm the corporation:

The Undersigned Builder Member warrants and agrees that it will not disclose such information to any party other than to (1) Its officers, attorneys and/or accountants or (2) to such court or courts as may be appropriate; or (3) to such other Builder Members of Home Warranty Corporation as may have a common interest in the well being of said corporation, the name of which will be supplied in advance to Home Warranty Corporation and which, likewise agree to keep such information confidential.... *The information herein requested will not be disclosed to any competitors of Home Warranty Corporation.*

*See* Paparone Letter (emphasis added). Subsequently, in its opposition to HWC's motion to amend the judgment, Fleisher has reaffirmed this pledge of good faith. The Court is of the opinion that there is no evidence which indicates that these safeguards and representations are either inadequate or false. Furthermore, having made these representations, both plaintiff and its counsel are well aware that they are subject to the most severe sanctions available to this Court should proof of fraud or unreasonably lax investigation be produced. As such, the Court will deny HWC's motion to reopen this case for the purpose of conducting further discovery.