# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOE WEINGARTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12931-VCG |
| | ) | |
| MONSTER WORLDWIDE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 20, 2017
Date Decided: February 27, 2017

Peter B. Andrews, Craig J. Springer, David M. Sborz, of ANDREWS & SPRINGER LLC, Wilmington, Delaware; OF COUNSEL: Randall J. Baron, David T. Wissbroecker, of ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California; Christopher H. Lyons, of ROBBINS GELLER RUDMAN & DOWD LLP, Nashville, Tennessee; W. Scott Holleman, of JOHNSON & WEAVER, LLP, New York, New York, *Attorneys for Plaintiff*.

Srinivas M. Raju, Matthew W. Murphy, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Michael J. McConnell, Walter W. Davis, Robert A. Watts, of JONES DAY, Atlanta, Georgia, *Attorneys for Defendant*.

GLASSCOCK, Vice Chancellor

This brief post-trial Memorandum Opinion addresses a discrete issue of law that appears to be of first impression. Must a plaintiff seeking corporate records under Section 220 of the Delaware General Corporation Law be a stockholder at the time she files her complaint, in order to have standing to pursue the action? If a stockholder makes a proper demand under Section 220, and a merger thereafter terminates the stockholder's ownership interest in the corporation, does the now-former stockholder have standing to bring a complaint for corporate records? That issue is directly before me here. The parties have made passionate arguments concerning the policy implications of a decision in their favor, which they find sufficient to support such a decision. My analysis is simpler; because the unambiguous language of Section 220(c) compels a finding that a former stockholder squeezed out in a merger thereafter lacks standing to bring an action under the Statute, the Plaintiff's Complaint here must be dismissed. My reasoning follows.

## I. BACKGROUND

Below is an adumbration of the facts sufficient to address the limited issue described above.

*A. The Parties*

Plaintiff Joe Weingarten is a former stockholder of Monster Worldwide, Inc.[1] Defendant Monster Worldwide, Inc. ("Monster" or the "Company") is a Delaware corporation with its principal place of business in Weston, Massachusetts.[2] Monster is in the business of providing job placement, career management, and recruitment and talent management services.[3]

Randstad Holding nv ("Randstad Parent") is a company organized under the laws of the Netherlands that specializes in flexible work and human resources services.[4] Randstad North America, Inc. ("Randstad") is a Delaware corporation and a subsidiary of Randstad Parent.[5] Merlin Global Acquisition, Inc. is a Delaware corporation and a wholly owned subsidiary of Randstad ("Merger Sub").[6] Evercore Group LLC ("Evercore") served as Monster's financial advisor in connection with the sale of Monster.[7] None of these entities is a party to this action.

---

[1] *See* Joint Trial Exhibit ("JX") 29 at JTX00959 (showing Plaintiff's ownership of Monster stock as of October 6, 2016).
[2] JX 12 at JTX00377.
[3] JX 7 at JTX00268.
[4] *See* JX 7 at JTX00268; JX 12 at JTX00379.
[5] JX 12 at JTX00377, JTX00379.
[6] JX 42 at JTX01224.
[7] JX 12 at JTX00405, JTX00429–431.

*B. The Merger*

On August 8, 2016, Monster, Randstad and Merger Sub entered into an Agreement and Plan of Merger (the "Merger Agreement").[8] The Merger Agreement contemplated a transaction under Section 251(h) of the DGCL, in which Merger Sub would make a cash tender offer to Monster's stockholders followed by a merger between Merger Sub and Monster (the "Merger").[9] The Monster Board of Directors (the "Board") unanimously approved and recommended the Merger Agreement.[10]

Pursuant to the Merger Agreement, Randstad, through Merger Sub, commenced a cash tender offer on September 6, 2016, offering to purchase all of Monster's issued and outstanding shares at a purchase price of $3.40 per share (the "Tender Offer").[11] The Tender Offer and "withdrawal rights in connection therewith" expired at midnight on October 28, 2016.[12] 45,973,527 shares were validly tendered and not withdrawn from the Tender Offer, representing approximately 51.5% of the outstanding shares.[13] Following consummation of the Tender Offer, on November 1, 2016, Randstad completed its acquisition of Monster and all of the outstanding Monster stock—excluding shares owned by Randstad, Merger Sub, Monster, and by stockholders who were entitled to and who validly

---

[8] *Id.* at JTX00377.
[9] *Id.* at JTX00377–378; JX 42 at JTX01224.
[10] JX 12 at JTX00398.
[11] *Id.* at JTX00377.
[12] JX 42 at JTX01224.
[13] *Id.*

exercised their appraisal rights—were cancelled and converted into the right to receive cash.[14] The Plaintiff's stock was among that cancelled.

*C. The Plaintiff's Section 220 Demand to Monster*

On October 19, 2016, more than ten weeks after Monster entered into the Merger Agreement, the Plaintiff sent a letter to Monster's Board demanding to inspect books and records (the "Demand Letter") in order to "determine whether it is appropriate to pursue litigation against all or some members of the Board" for alleged wrongdoing in connection with the Merger.[15] On October 26, 2016, Monster rejected the Plaintiff's demand "in its current form" and expressed its willingness to discuss the scope of a narrowly tailored production.[16] On the same day, the Plaintiff contacted Monster seeking to arrange a call about a voluntary production.[17] The Plaintiff also stated:

> [p]lease also note that, while we obviously disagree with numerous assertions in your letter, in light of your invitation to discuss production of documents we will abstain from filing a complaint to compel compliance with the demand unless and until the parties are unable to negotiate a resolution. If, as a result, the merger closes before Mr. Weingarten files a complaint, *we expect that the company will refrain from asserting any argument that Mr. Weingarten lost standing to inspect documents because the merger closed before he filed his complaint.* If the company will not refrain from making any such argument, please tell me by 10:00 a.m. Eastern time tomorrow.[18]

---

[14] *Id.*
[15] JX 29 at JTX00926.
[16] JX 38 at JTX01141.
[17] JX 43 at JTX01251.
[18] *Id.* (emphasis added).

4

Monster did not respond to the Plaintiff's e-mail by the deadline imposed; nonetheless, the Plaintiff did not file a complaint. Ultimately, Monster responded on Friday, October 28, 2016.[19] In its response, Monster refused to agree to "refrain from asserting any defense available to Monster should a complaint be filed."[20] At trial, Plaintiff's counsel represented that by the time he received Monster's response on Friday, it was "too late" to prepare and file a Section 220 complaint before the Merger closed on the following Tuesday. On November 4, 2016, after the Merger was consummated, Monster e-mailed the Plaintiff, asserting that, because the acquisition had closed, "the stated purpose for your Section 220 demand has been mooted" and that "there is nothing further to discuss."[21] The Plaintiff quickly responded and stated his position that the closing of the Merger did not extinguish his standing.[22] In addition, the Plaintiff explained to Monster:

> [y]ou waived the opportunity to contend otherwise when you waited until the day the tender offer expired to reply to my email and made what you are now saying was an illusory promise to produce documents in order to deter filing of a complaint.[23]

---

[19] *Id.*
[20] *Id.*
[21] *Id.* at JTX01250.
[22] *Id.*
[23] *Id.*

*D. The 220 Action*

The Plaintiff filed his Verified Complaint to Compel Inspection of Books and Records on November 22, 2016 (the "Complaint") to "determine whether wrongdoing or mismanagement has taken place such that it would be appropriate to file claims for breach of fiduciary duty, and to investigate the independence and disinterestedness of the Company's directors generally and with respect to the Company's acquisition."[24] The Complaint principally alleges two types of wrongdoing and mismanagement as the basis for the inspection: first, process-related claims alleging a flawed sales process resulting in an inadequate merger consideration;[25] second, disclosure-related claims alleging Monster's failure to disclose potential conflicts of interest of Evercore and Company managers, Evercore's financial analysis, and the standstill provisions with other bidders.[26] The Plaintiff seeks fourteen categories of documents from Monster.[27] A paper-record trial in this matter was held on February 20, 2017.

Monster argues that the Complaint should be dismissed for (1) lack of standing because the Plaintiff was no longer a Monster stockholder following the Merger, including as of the date he filed the Complaint, and (2) failure to state a

---

[24] Compl. ¶ 1.
[25] *Id.* at ¶¶ 10–15.
[26] *Id.* at ¶ 16.
[27] *Id.* at ¶ 19.

proper purpose for the demand.[28]  The Plaintiff responds that Monster is estopped

from challenging the Plaintiff's standing and that the closing of the Merger did not

affect his standing.[29]  Furthermore, the Plaintiff argues that he has alleged a credible

basis to suspect wrongdoing worthy of investigation.[30]  Because I find that the

Plaintiff lacks standing here, I do not reach the question of whether the Plaintiff has

met his burden of alleging a credible basis for the inspection.

## II. ANALYSIS

*A. Monster is not estopped from raising the issue of standing.*

I first briefly turn to the Plaintiff's attempt to invoke equitable estoppel here.

The Plaintiff points out that he asked Monster to waive lack of standing as a defense,

should he bring this action post-closing, and that he asked Monster to respond to this

request by a time certain.  Monster did not respond by this deadline, and the Plaintiff

argues that Monster should consequently be estopped from asserting lack of standing

here.  I assume—without deciding—that equitable estoppel, properly invoked, may

preclude my consideration of the Plaintiff's standing to proceed here.  Nonetheless,

I find estoppel inapplicable.

A party generally may be estopped from pursuing a right to which it is

otherwise entitled where equity so requires.  This Court applies the doctrine of

---

[28] Def's Opening Br. 1–2.
[29] Pl's Answering Br. 14–16.
[30] *Id.* at 30.

equitable estoppel where a party has, by its conduct, misled another, causing that other to detrimentally change position, in reliance on the conduct. To invoke equitable estoppel, the misled party must demonstrate 1) it lacked knowledge or the means of obtaining knowledge of the truth; 2) it reasonably relied on the conduct of the party against whom estoppel is sought, and; 3) it detrimentally changed position based on that reliance.[31] Under the facts here, there was no "conduct" by Monster to rely on. The Plaintiff stated that he "expected" Monster to waive standing as a defense to an action under Section 220 if the Merger closed, and threatened to bring suit unless Monster did so by a time certain provided by the Plaintiff. Monster did not timely reply;[32] nonetheless, the Plaintiff did not file suit before the Merger closed. Under these circumstances, there was no conduct by the party against whom the estoppel is sought on which the Plaintiff purports to rely, and to the extent it relied on Monster's silence, that reliance is not reasonable. I find the doctrine of equitable estoppel inapplicable, therefore.

I now turn to the issue of standing.

---

[31] *E.g. Salem Church Associates v. New Castle County*, 2006 WL 2873745, at *12 (Del. Ch. Oct. 6, 2006).

[32] Monster's response—that it would not waive standing—came on the Friday before the merger closed the following Tuesday; the Plaintiff contends that this response came "too late" for him to draft and file a complaint pre-closing.

8

*B. Section 220 requires that a plaintiff own stock when the Section 220 complaint is filed.*

Section 220(a) defines a stockholder as "a holder of record of stock in a stock corporation, or a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person."[33]

Section 220(b) provides that "[a]ny stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose" records of her corporation.[34]  Where the stockholder states such a demand in compliance with subsection (b), the corporation has five business days to respond.[35] If it denies the demand or fails to respond, the Statute provides that the stockholder may apply to this Court for relief.[36]

Section 220(c) provides, in relevant part, that

If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection.  The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. . . . Where the stockholder seeks to inspect the corporation's books and records, other

---

[33] 8 *Del. C.* § 220(a).
[34] *Id.* § 220(b).
[35] *Id.* § 220(c).
[36] *Id.*

9

than its stock ledger or list of stockholders, such stockholder shall first establish that:

(1) Such stockholder *is* a stockholder;
(2) Such stockholder *has* complied with this section respecting the form and manner of making demand for inspection of such documents; and
(3) The inspection such stockholder seeks is for a proper purpose.

Where the stockholder seeks to inspect the corporation's stock ledger or list of stockholders and establishes that such stockholder *is* a stockholder and *has* complied with this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection such stockholder seeks is for an improper purpose.[37]

Section 220 codifies what had been a common law right to inspection of corporate books and records by stockholders.[38] The Statute prescribes who may seek such records, and under what circumstances. The Statute involves a balancing by the legislature of two valid interests: the interest of a stockholder, as an owner of the entity, to seek corporate records in pursuit of her interests as a stockholder; and the interest of the corporation and its fiduciaries in being free of frivolous or vexatious demands to examine records, and to avoid production of records to individuals pursuing interests other than those relating to stock ownership. In vindication of these at times competing interests, the legislature has provided requirements with which those seeking records must comply in order to invoke the authority of this

---

[37] *Id.* § 220(c) (emphasis added).
[38] *See, e.g., Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002); *Cochran v. Penn-Beaver Oil Co.*, 143 A. 257 (Del. 1926).

Court to order records produced. One set of these requirements involves demand on the entity; to have standing to proceed in this Court under Section 220, a stockholder must have made a demand on the corporation for the records she seeks, in which demand—if a beneficial owner—she must state under oath, and provide and adopt documentary evidence, that she *is* a stockholder. This ensures that only stockholders may make a demand, which is a prerequisite to standing to bring suit under the Statute. I presume that the Plaintiff complied with this requirement, which is set out in subsection (b) of the Statute.[39]

Fulfilling the demand requirement of subsection (b) is necessary, but not sufficient, to proceed here, however. Where, as here, a stockholder has complied with subsection (b) and demand is refused by the corporation, a stockholder may proceed in this Court to the extent she has complied with subsection (c) of Section 220. That subsection requires a stockholder seeking records to "first establish" 1) that she "has" complied with the demand requirement of subsection (b), and 2) that she "is" a stockholder.[40] It is the latter requirement that the Plaintiff failed to meet here.

---

[39] *See* 8 *Del. C.* § 220(b).

[40] *See* 8 *Del. C.* § 220(c). Where the records sought are other than the stock list or ledger, the subsection also requires that the stockholder establish a proper purpose. *Id.*

My purpose in statutory construction must be to give effect to the expressed intent of the legislators.[41] Where no ambiguity exists, the plain meaning of the language employed dictates construction.[42] Only where more than one reasonable interpretation exists may I employ secondary rules of construction.[43] The language of Section 220(c) is plain and unambiguous. By requiring that a plaintiff under Section 220, to seek relief from this Court, demonstrate both that it "has"—past tense—complied with the demand requirement, and that it "is"—present tense—a stockholder, the legislature has made clear that only those who are stockholders at the time of filing have standing to invoke this Court's assistance under Section 220.

The Plaintiff provides policy arguments, explaining why this requirement is not optimal, in his view. Those arguments are misplaced—in view of the plain language employed, they are for the General Assembly, not this Court. What the Plaintiff has not demonstrated is that the language employed is ambiguous, or that its enforcement renders the Statute internally inconsistent or absurd. The Plaintiff also points to two cases, *Cutlip v. CBA Int'l, Inc. I*[44] and *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*,[45] as instructive. Those matters involved stockholders who lost their stock via merger during the pendency of actions under

---

[41] *See, e.g., Chase Alexa, LLC v. Kent County Levy Court*, 991 A.2d 1148, 1151 (Del. 2010).
[42] *Id.*
[43] *Id.*
[44] 1995 WL 694422 (Del. Ch. Oct. 27, 1995).
[45] 2005 WL 1713067 (Del. Ch. July 13, 2005).

12

Section 220.  Under those facts, this Court found that the mergers, despite depriving the plaintiffs of their stock, did not require dismissal or deprive those plaintiffs of standing going forward.  The Plaintiff here commends the logic of those cases to me, as applicable to this matter.  However, *Cutlip* and *Deephaven* involved stockholders who had complied with the standing requirements of Section 220(c) at issue here; at the time suit was filed, they were stockholders.[46]  As then Vice Chancellor Steele found in explaining his reasoning in *Cutlip*, "at the time they brought the action, [the plaintiffs] did have standing.  They were record owners at that time."[47]  I find *Cutlip* and *Deephaven* inapposite.

### III. CONCLUSION

Because the Plaintiff cannot "first establish" that he was a stockholder at the time this action under Section 220(c) was filed, he lacks standing to proceed, and the matter must be dismissed.  An Order accompanies this Memorandum Opinion.

---

[46] A reasonable argument could be made that the directive that a plaintiff "first establish" that she is a stockholder before receiving relief under Section 220(c) is ambiguous as to whether stockholder status must obtain at the time of relief *as well as* the time of filing; this is the issue addressed in *Cutlip* and *Deephaven*.  Nevertheless, such ambiguity cannot assist the Plaintiff here, because the construction of Section 220(c) that he urges—interpreting the statutory language to require only a showing of stock ownership in the past—is not a reasonable reading of the statutory language.

[47] *Cutlip*, 1995 WL 694422, at *2.

13

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOE WEINGARTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. 12931-VCG | |
| | ) | |
| MONSTER WORLDWIDE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 27th day of February, 2017,

The Court having considered Plaintiff's Complaint, and having determined that the Plaintiff lacks standing under Section 220 of the Delaware General Corporation Law for the reasons set forth in the Memorandum Opinion dated February 27, 2017, IT IS HEREBY ORDERED that Plaintiff's Complaint is DISMISSED.

SO ORDERED:


/s/ Sam Glasscock III

Vice Chancellor